COLVARUSO'S GUARDIAN *v.* STROH BREWERY CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—FOUR-YEAR-OLD CHILD.
   A boy who is three days less than four years old cannot be guilty of contributory negligence.

2. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.
   On appeal from judgment for defendant *non obstante veredicto,* the testimony on behalf of plaintiff must be looked upon in the light most favorable to him.

3. EVIDENCE—ADVERSE WITNESSES—STATUTES.
   A plaintiff in a personal injury case who calls defendant's truck driver to the stand as an adverse witness under the

---

Contributory negligence of a child plaintiff, see 2 Restatement, Torts, § 464(2), also see § 284 and comment (b).

Functions of court and jury on questions of negligence and duty of court to set aside a verdict if the jury unreasonably finds defendant's conduct negligent, see 2 Restatement, Torts, § 285 and comment (e).

statute is bound by the uncontradicted and unimpeached testimony of such witness (3 Comp. Laws 1929, § 14220).

4. SAME—TRUCK DRIVER—EYEWITNESSES—CAUSE OF ACCIDENT.

In action by four-year-old boy's guardian against brewery for injuries to boy alleged to have been due to negligence of driver of defendant's heavy truck, plaintiff was bound by uncontradicted and unimpeached testimony of such truck driver, the only one who saw the boy emerge from near parked cars and traverse about 7 feet while truck moved about 4 feet, and who stated that he stopped truck almost instantaneously after he saw the boy immediately before he ran into it (3 Comp. Laws 1929, § 14220).

5. NEGLIGENCE—WITNESSES—IMPEACHMENT.

Negligence upon which to base action to recover damages for injuries to plaintiff's four-year-old son must arise from failure to perform a duty to plaintiff's ward and where testimony of one alleged to have been negligent was that he had performed that duty, such testimony is not impeached by testimony of same witness that, shortly before the accident, he did not perform it to others similarly situated.

6. WITNESSES—EVIDENCE—OPPOSITE PARTY—IMPEACHMENT—STATUTES.

Under statute relative to examination of opposite parties, the employee of an opposite party may be called and cross-examined without the party calling him being bound by his answers or prevented from impeaching him (3 Comp. Laws 1929, § 14220).

7. EVIDENCE—OPPOSITE PARTY—WEIGHT OF EVIDENCE—WITNESSES—STATUTES.

Testimony of witness called by opposite party under statute must be weighed and considered same as that of any other witness (3 Comp. Laws 1929, § 14220).

8. AUTOMOBILES — NEGLIGENCE — EVIDENCE — MINORS — BREWERY TRUCK.

In action for injuries to four-year-old boy where record shows defendant brewery's truck driver was the only one who saw the child just before and right up to the moment of the accident, that his testimony exonerates himself and defendant from liability, that physical facts indicate the boy ran into wheel of truck and that truck did not run over him, that driver's testimony was not contradicted nor his credibility impeached, and that if jury chose to disbelieve him there would not be any testimony showing just exactly how the

accident occurred, liability, as a matter of law, would not
attach to defendant brewery company.

9. Evidence—Sufficiency to Support Verdict—Conjecture.

A verdict may not rest upon conjecture or a reconstruction of
events which have no evidentiary foundation.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 9, 1942. (Docket No. 79, Calendar No. 41,879.) Decided April 6, 1942. Rehearing denied May 18, 1942.

Case by Paul Colvaruso, guardian of Sebastian Colvaruso, a minor, against Stroh Brewery Company, an Arizona corporation, for damages for personal injuries sustained by plaintiff's ward as the result of alleged negligent operation of a truck. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Defendant cross-appeals. Affirmed.

*William J. McBrearty* and *Manuel Zechman,* for plaintiff.

*Ernest P. La Joie,* for defendant.

Butzel, J.  At 2:55 p.m., June 7, 1939, at a point approximately 8 to 9 feet south of the northerly curb of Waterloo street in the block between St. Aubin avenue and Dubois street, Detroit, Michigan, Sebastian Colvaruso, then three days under four years of age, was severely injured by coming into contact with the left front wheel and tire of a large Stroh Brewery truck which was being driven in an easterly direction on Waterloo street at a rate of speed of about 7 miles per hour. Plaintiff, the father of the little boy, brought this suit as guardian. Plaintiff's claim is that the truck ran into the boy; defendant's is that the boy ran into the truck. At the outset, it may be said that, as a mat-

ter of law, a boy of such tender years cannot be guilty of contributory negligence, and the testimony on behalf of plaintiff must be looked upon in the light most favorable to him, inasmuch as a judgment *non obstante veredicto* was rendered after the jury brought in a verdict of $12,500 against defendant.

The case arouses one's sympathy. The boy was very badly hurt, hovered between life and death for some time, was hospitalized for many months, suffered a compound fracture of the right tibia, and the skin and fatty tissue of his left leg were denuded to the bone. He always will have an unsightly looking leg and may have some permanent disability in his walk, but with the possibility that he may outgrow it. It is our duty to judge the case by established rules of law, although we can readily see how sympathy might have affected the verdict of most jurors if the case were submitted to them. None of the witnesses saw the accident except one John Bova, the driver of the truck. One Minnie Brymer, who resided on the north side of Waterloo street, in the third house west of the corner of Dubois street, only saw the little boy's head as he came in contact with the vehicle, but she did not see any other part of him at that time, nor did she see how he came in contact with the truck. Bova testified that he saw the little boy two feet south of the north curb of Waterloo street just as the boy was emerging from between two parked automobiles, and that from the moment he saw the boy up to the instant he ran into the truck, the boy traveled about 7 feet and the slow-moving truck traveled only about 4 feet. This interval was only a fraction of a second or two as the truck was moving at 7 miles per hour. Bova testified that he stopped the truck almost instantaneously after he saw the boy run into it. All

the witnesses agree that the truck stopped almost instantly after the collision. Bova testified that, allowing for reaction time, he slammed on his brakes as soon as he saw the boy. The three witnesses for plaintiff were in the immediate vicinity of the accident. They gave testimony at the trial tending to locate the boy in an almost stationary, confused position in the pathway of the oncoming truck, thus placing responsibility for striking the boy upon the driver of the truck. But all of these three witnesses denied having seen the boy at the time of the actual impact. It cannot be said, therefore, that the testimony of any of these witnesses contradicts that of Bova, whom plaintiff called as an adverse witness under the statute * and by whose uncontradicted and unimpeached testimony he was, therefore, bound. Each of these witnesses lost sight of the boy before the moment of impact. Witness Asa Spence stated his head was turned the other way from the truck, which had passed by him immediately before. Witness Evelma Greer stated that she was watching the two other children who had shortly before run from the north to the south curb of Waterloo street. Witness Minnie Brymer stated she was looking between two parked cars and only saw the little boy's head. Bova alone testified that he saw the little boy at the final moment before the impact, although the final instant of impact, when the little boy hit the side of the tire, must have been invisible to Bova from his elevated position in the driver's seat because of the shortness of the child. The record leaves in absolute obscurity the answer to the question whether the boy was hit by the left front wheel of the truck and thrown around it to the left side, or whether he ran

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).— REPORTER.

headlong into the side of the left front tire, but whichever took place, either hypothesis is consistent with Bova's testimony as to how the child ran into the truck. The physical facts further support Bova's testimony.

There is some dispute as to whether the accident occurred east or west of a space on the north side of Waterloo street opposite an alley which runs into and ends on the south side of Waterloo street. Bova and his two helpers testified it occurred west of the alley. The other witnesses testified that it occurred east of the alley. The more important question is, *how* did the accident occur, rather than the exact place. The only testimony in regard to the way in which it took place is that of Bova, the sole witness to the actual accident.

Plaintiff attempts to charge Bova with negligence. Plaintiff's three witnesses saw the two children about the little boy's age who crossed Waterloo from north to south before Sebastian tried to do likewise, and plaintiff bases his claim of negligence on Bova's admission that he did not see these little children. Negligence, however, is a failure to perform a duty to plaintiff's ward. Where a witness, who was not impeached, testified that he performed such duty, even if he proceeded to testify that, shortly before the accident, he did not perform it to others similarly situated, the latter testimony does not destroy the force of the former, which in the absence of either contradiction or impeachment exonerates the witness of the charge of negligence.

"Under this statute (3 Comp. Laws 1929, § 14220 [Stat. Ann. § 27.915]), an employee of the opposite party may be called and cross-examined without the party calling him being bound by his answers, or prevented from impeaching him; but Gahring (such a witness, called by plaintiff) was a witness

for plaintiff, not for defendant (*Jones* v. *Railroad Co.*, 168 Mich. 1); and his testimony, being in the case, must be weighed and considered the same as that of any other witness (*City of Kalamazoo* v. *Standard Paper Co.*, 182 Mich. 476); and though plaintiff was at liberty to contradict his testimony (*Cook* v. *Railroad Co.*, 189 Mich. 456), she was bound thereby (*Aphoresmenos* v. *McIntosh*, 189 Mich. 680), except so far as such testimony was contradicted (*Swank* v. *Croff*, 245 Mich. 657)." *Fleegar* v. *Consumers Power Co.*, 262 Mich. 537, 541.

See, also, *Spillman* v. *Weimaster*, 279 Mich. 93, 97, and *Hubert* v. *Joslin*, 285 Mich. 337, as to the right of party calling an adverse witness to impeach him.

Shortly after the accident a police officer arrived upon the scene and he talked with the various witnesses. Without objection, he read from his notes:

"The driver of this truck went east on Waterloo at 5 m.p.h. and pedestrian ran between parked cars into the left front wheel and it stopped immediately. * * * All witnesses say the same."

Three days later statements were taken from Spence and Mrs. Brymer. Statements also were taken in 1940 from these witnesses and from Mrs. Greer. These later statements were all sworn to after being given with the exception of Mrs. Brymer's which was not sworn to at all. Of the five statements, only Mrs. Brymer's first statement was signed. It must be realized that these statements were *ex parte* and not made in court, though a court stenographer took them down with a stenotype machine, and the questions asked seemed solely for the purpose of ascertaining the facts. These statements were used by defendant's counsel for impeachment purposes. They largely corroborated the testimony of the policeman and of Bova, the driver. The witnesses made considerable effort to depart

from their former statements and while they partly succeeded, one of the witnesses stated that, in the last analysis, she did not see the boy strike the truck or the truck strike the boy; no other conclusion can be deduced from the testimony of the other two. Witness Brymer, after she stated she saw the boy going under the truck, when asked to state specifically just what she saw, stated: "Then I just saw his head, that is all I saw."

She also testified that when she warned the boy to get off the street but shortly before the accident, the boy came up on the curb between the two parked cars, and that when she looked back she saw his head as he was going under the wheel, while she was looking between the same two cars. She testified that the boy did come up to the curb, that he walked towards another boy, then a few seconds later the accident occurred. Mrs. Brymer gave no indication, however, of how long an interval elapsed between the time that the little boy came from between the cars in response to her warning and the accident. She would not say where the truck was when she warned him, but she had progressed only to the second step of the porch of the second house to the east toward which she was walking at the time she cautioned the boy, when she saw Sebastian's head as he went under the wheel. The inference is inescapable that the interval must have been very short, in which the little boy would have covered the distance from the curb to the truck, if he ran headlong into the truck, in accordance with the testimony of the driver. This inference also favors the theory that the boy hit the truck rather than that the truck hit the boy. As a matter of fact, had the latter been the case, it is more than likely that the boy would have been crushed by the oncoming wheel, whereas, as a matter of fact, his injuries,

while severe, did not result in this happening. He suffered a compound fracture of the right tibia. Had he been run over by the tire, more than a fracture would have taken place. Blood and flesh were on the lugs around the hub of the wheel. While science does not disclose any method of determining just what effect would be produced if a slight little boy were run into by a 17,000-pound truck, the physical facts indicate that the truck did not run over him but that he ran into the side of the truck, was thrown down, and the flesh of one leg was caught by the overlap of the tire and the skin largely peeled off the leg with flesh clinging to the lugs and blood running over the tire.

It should be noted also that Waterloo street is only 26 feet wide from curb to curb. Witnesses for plaintiff disputed the fact set forth in the original statements that the boy ran between two parked cars. One witness states that there were no parked cars at that particular point, while another testified that he ran from behind only one parked car which had no others in front of it. There were, however, cars parked on each side of the street so that with cars of an average width of 6 feet on each side of the street there would be a driving space of only 14 feet left. The truck itself was 9 feet wide and required a certain amount of clearance from the parked cars. There was, according to Bova's and Spence's testimony, very little room left for the truck to move in. The driver's seat on a truck is fairly high and the safe clear distance so that the driver could see a small boy who had just come out into the street would be a line some distance ahead of the front of the hood and not immediately adjacent thereto. There is no claim that the truck was not proceeding in a straight direction. Witness Greer was the only one of the three witnesses who

did not make a statement to the police officer on the day of the accident or to the court reporter a few days thereafter. She did not disclose any information until March 27, 1940, when, in an *ex parte* statement to the stenographer, she stated that the last time she saw the little boy he was up on the curb. However, on the witness stand, she testified that she saw the little boy standing in the middle of the street looking confused and excited as he saw the oncoming truck but when the truck passed her it blotted out her view of the little boy. She tried to explain the discrepancies in her statements on the ground that she was not paying attention when she gave her first statement.

Under ordinary circumstances, we would hold that the verdict rendered by the jury was against the great weight of the testimony but in the last analysis, however, this record leaves no doubt but that the only witness called by either party who saw the child just before and right up to the moment of the accident was Bova, and that his story, which exonerates himself and defendant, was not contradicted, and his credibility was not impeached. If the jury chose to disbelieve him, there would not be any testimony showing just exactly how the accident occurred. Neither of the truck driver's helpers saw the boy. By calculations it was demonstrated that, assuming the boy to be 3 feet tall, and considering the height of the truck's hood from the ground as well as the distance back from the radiator of the driver's and helpers' eyes, the boy would have to be some distance in front of the truck before he could be seen, because the hood of the truck obscured the vision of the space immediately in front of the truck. The verdict may not rest upon conjecture or a reconstruction of events which have no evidentiary foundation. The only evidence of the

manner in which the accident occurred does not fix liability on defendant.

It follows, therefore, that the judgment in favor of the defendant was correct, and is affirmed, with costs.

Chandler, C. J., and Boyles, North, Starr, Bushnell, and Sharpe, JJ., concurred. Wiest, J., did not sit.