KAISER *v.* GOODEN.

AUTOMOBILES—MINOR PEDESTRIANS—EQUALLY DIVIDED COURT.

> In action by boy 5 years and 8 months of age when struck by
> defendant's westbound car while crossing 22-foot pavement
> of public highway, where it appears that the defendant driver
> saw the plaintiff and another boy standing about 4 feet north
> of the pavement for some 150 to 200 feet while he was pro-
> ceeding at 35 to 40 miles an hour, judgment for defendant
> *non obstante veredicto* is affirmed by an equally divided court.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 8, 1949. (Docket No. 44, Calendar
No. 44,330.) Decided September 8, 1949. Rehear-
ing denied October 14, 1949.

Case by Ronald Kaiser, by his next friend, against
Nelson Gooden for personal injuries sustained when
he was struck by defendant's automobile. Verdict
for plaintiff. Judgment for defendant *non obstante
veredicto*. Plaintiff appeals. Affirmed by an equally
divided court.

*Elmer R. Kuck* and *George A. Parmenter,* for
plaintiff.

*Alexis J. Rogoski,* for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES

3 Am Jur, Appeal and Error, § 1135; 5 Am Jur, Automobiles,
§§ 675, 679, 711.

Duty and liability to person struck by automobile while crossing
street at unusual place or diagonally.   67 ALR 313, supple-
menting 14 ALR 1176.

Liability for injury to pedestrian who suddenly darts or steps into
path of automobile.   113 ALR 528, supplementing 65 ALR
192.

Bushnell, J. *(for affirmance)*. Plaintiff Ronald Kaiser, then 5 years and 8 months of age, was struck by an automobile driven by defendant Nelson Gooden on the Bolt highway, also known as Apple avenue. The accident occurred about 1:30 p.m. on March 27, 1946. This through highway between Grand Rapids and Muskegon has a 22-foot pavement with 6-foot gravel and clay shoulders on either side.

Gooden was traveling at a speed between 35 and 45 miles per hour in a westerly direction, with nothing to obstruct his vision for over 500 feet. He first saw Ronald at a distance of about 150 to 200 feet, standing about 4 feet north of the pavement, on the shoulder, facing north, with another boy who was facing south. While Gooden was watching them and as he approached closer, Ronald whirled around and ran in front of Gooden's car. Gooden testified that the day was clear, the pavement dry, and that his brakes and horn were in good condition.

Just before the accident a little girl was standing near a mail box on the south side near the highway. Gooden said he took his foot off the accelerator as he approached the boys and, when Ronald darted into the road, he applied his brakes and swerved a little, but was unable to avoid the accident. Ronald was struck by the front of the Gooden car between its headlight and grill, and was thrown to the center of the road. The Gooden car stopped within 20 or 25 feet and Ronald was put in another car and taken to the hospital.

Ronald, who was severely injured, was on his way to school. He remembered running across the pavement and that he looked when he got to the center of the highway and said he did not see any car coming. He admitted running with his head down.

The only eyewitness who testified, other than Mr. and Mrs. Gooden, was Mrs. Jean Post, who lived in the neighborhood and who was driving her car in

the opposite direction of the Gooden car. She noticed the boys and the speed of the approaching car and saw Ronald run out and said she knew he was going to be hit. She screamed but without avail. She testified that Ronald "turned around and darted on the highway" when the Gooden car was "nearly right there," and that she was only about 40 feet from the point of impact.

On his direct examination, Gooden said in part:

"I knew there were boys on my right hand side. I didn't take my attention off the boys long enough to take a good look at the little girl on the other side of the road and then looked back to see the boy in front of my car. I didn't tell people after the accident that I had looked at this little girl at the mail box on my left and when I looked back the little boy was in front of my car. That isn't what happened."

At the close of plaintiff's testimony the court denied defendant's motion for a directed verdict for the reason that 1 witness stated that Gooden admitted "that his attention and gaze was attracted to a girl mailing a letter, and when he looked back, the child was right in front of him."

The court permitted a re-argument on the motion after making this statement and then took the motion for directed verdict under advisement.

After the jury's verdict of $5,000, plaintiff's motion, together with one for a judgment notwithstanding the verdict was considered and granted, the court relying on *Braxton* v. *Gazdecki*, 255 Mich 518. In granting the judgment *non obstante veredicto* the trial judge said:

"The court has carefully reviewed the stenographic record of the proceedings had on the trial of the cause and the decisions cited by counsel for the respective parties in their briefs. I am of the opinion that though the evidence be reviewed in the light most favorable to plaintiff, it nevertheless fails

to establish that defendant was negligent in any of the respects alleged against him and that he was therefore free from negligence as a matter of law. To hold otherwise would, in effect, require defendant to have operated his motor vehicle in such a manner as to have guaranteed the safety of the plaintiff. The law does not require defendant to exercise more than ordinary care in the operations of his motor vehicle and the evidence does not warrant the conclusion or inference that he failed so to do."

The record does not show that the withdrawal of Gooden's attention from the boys was the proximate cause of Ronald's injury. It shows rather that the proximate cause was Ronald's sudden and unforeseen action in darting into the path of Gooden's automobile at a time when it was so close to him that Gooden was powerless to prevent the accident.

The situation is not unlike that disclosed in *Colvaruso's Guardian* v. *Stroh Brewery Co.*, 301 Mich 245, and the law as stated there and in *Braxton* v. *Gazdecki, supra,* is applicable.

The testimony in the instant case requires a concurrence in the conclusion reached by the trial judge, and we observe here, as we did in *Foster* v. *Rinz,* 202 Mich 601, that—

"One cannot read this record without being overwhelmingly convinced that this was a mishap pure and simple, and that there was nothing done by the driver which caused the accident and nothing he could have done to have prevented it."

The judgment is affirmed, with costs to appellee.

REID, NORTH, and BUTZEL, JJ., concurred with BUSHNELL, J.

DETHMERS, J. *(for reversal).* I do not concur in Mr. Justice BUSHNELL's opinion.

Although there is testimony in the case in behalf of the defendant to the effect that, as stated in Justice BUSHNELL's opinion, plaintiff darted "into the path of Gooden's (defendant's) automobile at a time when it was so close to him that Gooden was powerless to prevent the accident," to adopt that version is to accept the evidence most favorable to defendant and reject evidence and reasonable inferences therefrom favorable to plaintiff. This being an appeal from a judgment for defendant *non obstante veredicto,* based on a holding by the trial court that the defendant was free from negligence as a matter of law, the evidence must be viewed in the light most favorable to plaintiff. So viewed, the record discloses the following: Defendant's view of the 5-year-old plaintiff was clear and unobstructed and defendant first saw him 150 or 200 feet distant standing on the shoulder of the road 4 feet north of the north edge of and with his back toward the pavement; defendant was traveling 35 to 45 miles per hour about 2 feet south of the north edge of the pavement. A witness testified that her small daughter was at that time mailing a letter in a mailbox on the south side of the highway; that immediately after the accident defendant admitted that he was looking at this little girl south of the pavement and that when he looked back the plaintiff was in front of him. Defendant testified that as soon as he saw plaintiff move, not quite 10 feet away, he, the defendant, applied his brakes just before he hit plaintiff and that he brought his automobile down from 35 or 40 miles per hour to a stop within 20 to 25 feet. Plaintiff was at the center of the 22-feet-wide pavement when struck by the front of defendant's automobile. Applicable here is the following from *Anderson* v. *Kearly,* 312 Mich 566:

"In *Brown* v. *Arnold,* 303 Mich 616, 623, we said:

"'The facts we have recited were established by the testimony, and we have repeatedly held that a jury may draw reasonable and legitimate inferences from established facts. Negligence may be inferred from the facts and circumstances. Physical facts may justify a jury finding that defendant is guilty of negligence. *Faustman* v. *Hewitt,* 274 Mich 458; *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich 586. Negligence may be inferred from circumstances which place the case within the field of legitimate inferences from established facts. *Fish* v. *Railway,* 275 Mich 718.'

"Having in mind that upon a motion to direct a verdict against plaintiff, the testimony and all legitimate inferences which may be drawn from it most favorable to plaintiff must be accepted, we are of the opinion that plaintiff established a prima facie case."

The physical facts from which the jury might "draw reasonable and legitimate inferences" and from which defendant's negligence might properly be inferred are that while the small boy plaintiff turned around to face the pavement and thereafter traversed 4 feet of the shoulder and 11 feet of the pavement, a total of 15 feet, before being struck, defendant was traveling such distance as a speed of from 35 to 45 miles per hour would propel his automobile forward during that period of time. Defendant was able to and did stop his automobile in from 20 to 25 feet. Was it unreasonable for the jury to infer that defendant was considerably more than that stopping distance back from the point of impact when first he would have been able to see plaintiff move had the defendant been looking? And yet defendant says he first saw plaintiff moving when he was only 10 feet away. Whether defendant saw the infant plaintiff move toward and on to the pavement and took steps to avoid the accident as soon as an ordinarily careful and prudent person would have

done under like circumstances was a question of fact for the jury. If he failed to do so, he was, in fact, guilty of negligence. Whether the accident could have and would have been averted had defendant acted in those respects as an ordinarily careful and prudent person would have done under like circumstances was also a question of fact for the jury, bearing on proximate cause. There was evidence in the case of physical facts from which the jury could reasonably and legitimately have inferred that defendant was guilty of negligence which was a proximate cause of the accident.

In *Braxton* v. *Gazdecki,* 255 Mich 518, cited by Justice BUSHNELL, this Court affirmed the finding of the trial court, sitting as a trier of the facts without a jury, that defendant was not, as a matter of fact guilty of negligence. Our holding was, in effect, that the evidence did not preponderate against such finding of fact. In so holding this Court did not have occasion to, nor did it pass on the question of whether defendant should have been held to be free from negligence as a matter of law. The case is, therefore, not authority for such holding in the case at bar. *Colvaruso's Guardian* v. *Stroh Brewery Co.,* 301 Mich 245, and *Foster* v. *Rinz,* 202 Mich 601, are not in point for the reason that in those cases there was no testimony that the defendants were negligent in any respect nor were physical facts established, as in the instant case, from which such negligence could have been inferred.

The judgment *non obstante veredicto* should be reversed and set aside and the cause remanded for entry of judgment on the verdict for plaintiff. Costs of both courts to plaintiff.

SHARPE, C. J., and BOYLES and CARR, JJ., concurred with DETHMERS, J.