McGUIRE v. REENDERS DAIRY COMPANY.

1. AUTOMOBILES—NEGLIGENCE—WRONG SIDE OF ROAD—AMENDMENT
OF DECLARATION—EVIDENCE—INSTRUCTIONS—REMAND.

Trial court on remand from Supreme Court is directed to permit
timely amendment of declarations in actions for injuries to
2-1/2-year-old child by defendant's milk truck so as to permit a
showing that the truck was on the wrong side of the road, to
admit evidence thereof on retrial, and to omit instruction that
jury may not find negligence of defendant based on location of
the truck, where amendment of declaration so to show had been
denied during the trial, proffer of supporting testimony refused
and such instruction given to jury, although not holding such
action constituted reversible error under the circumstances and
error is otherwise discovered necessitating reversal.

2. EVIDENCE—HEARSAY—ADMISSIONS AGAINST INTEREST—AUTOMO-
BILES—INFANTS.

Admission, over objection, of hearsay testimony as to mother's
admissions against interest that her 2-1/2-year-old child had
come out from between parked cars before being injured when
hit by defendant's milk truck in residential neighborhood *held*,
prejudicial.

3. SAME—ADMISSION AGAINST INTEREST—PARTIES—PARENT AND
CHILD.

An admission against interest by a mother who has no legal inter-
est in action by an infant and derivative action by father for
injuries received by the child, would not be binding upon the
plaintiff child.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5]  8 Am Jur 2d, Automobiles and Highway Traffic §§ 1018–1036.
[2]  8 Am Jur 2d, Automobiles and Highway Traffic § 966.
[3]  20 Am Jur, Evidence §§ 544, 556.
[4]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 430–432.
Modern trends as to contributory negligence of children.  77 ALR
2d 917.

4. Automobiles—Infants—Crossing Street—Impertinent Evidence.

> Admission over objection of testimony that 2-1/2-year-old child on previous occasions had never stopped to look before crossing street *held*, so prejudicial as to entitle child and her father to new trial, since contributory negligence of such a young child was not and could not be in issue, it was impertinent to issues of negligence of defendant's milk truck driver, proximate cause, and damages, and could not be admissible for impeachment purposes.

5. Same—Driver's Duty to Observe—Instructions.

> Instruction in actions to recover damages for injuries to 2-1/2-year-old child which occurred when defendant's truck hit her while delivering milk on a lightly traveled residential area, whereby in commenting on a driver's duty to make observation, a comparison was drawn involving a busy, main thoroughfare should not be repeated on retrial, since it could only serve to confuse the jury.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted June 4, 1963. (Calendar Nos. 5, 6, Docket Nos. 49,726, 49,727.) Decided July 17, 1963.

Case by Jeanne McGuire, a minor, by Donald McGuire, next friend, for personal injuries sustained when struck by milk truck. Derivative suit by father, Donald McGuire, for medical expense. Cases consolidated for trial and on appeal. Verdict and judgments for defendant. Plaintiffs appeal. Reversed and remanded.

*James P. Mattimoe* and *P. Charles Peters* (*Henry J. Freud,* of counsel), for plaintiffs.

*Ford, Kriekard & Brown* (*Gordon H. Kriekard,* of counsel), for defendant.

Dethmers, J. Defendant was owner of a milk truck being driven by its employee within the ambit of his employment. It struck and injured 2-1/2-

year-old plaintiff, Jeanne McGuire. The 2 suits, here consolidated, are, respectively, for her damages and those of her father, plaintiff Donald McGuire, resulting from her injuries. From judgments for defendant, entered on the jury's verdict of no cause for action, plaintiffs appeal.

The accident occurred on a north and south street, paved with tarvia 18 feet wide, but without curbs, gutters or sidewalks. The area is residential and the lawns slope from the houses to the edge of the tarvia. The terrain is flat and affords good opportunity for observation by motorists. Defendant's driver was going north at a speed, as he said, of from 10 to 20 miles per hour. There also was testimony from others that his speed was from 5 to 10 miles per hour, very slow. He testified that he had seen a group of children cross the street about 300 feet ahead of him; that as he drove along he looked out for house numbers. He told an officer that he saw a "friend" to his left and waved to and greeted him and that the friend hollered "stop", and he stopped and did not know that he had hit the child. The middle of the front bumper struck the child who was then at the middle of the street. Three disinterested eyewitnesses to the accident testified that the child was crossing the street from east to west and that there were no vehicles parked on the east side of the street but there were some on the west side. At trial the driver testified that, just before striking her, he had seen the top 2 inches of the child's head about 3 feet ahead of the truck, that he could see the right part of her "forehead facing the east, more or less", her right eye toward the truck, and so he concluded she had come from behind a parked vehicle on the west side of the street. The child's left leg was fractured.

Plaintiffs' declarations alleged the driver's negligence to consist of failure to drive with due caution

or at a prudent rate of speed and failure to make proper observation. No charge was made of driving on the wrong side of the pavement. After considerable proofs were in, indicating that the vehicle had been driven other than in its own right-hand lane, plaintiffs sought to amend their declarations accordingly. This was first permitted by the court, but, later, the court took the opposite view and denied the motion to so amend. Plaintiffs' proffer of testimony as to location of the truck on the pavement just before the accident was refused on the ground that this was not within the scope of the pleadings. The court instructed the jury that, on that same ground, it might not base a verdict for plaintiffs on location of the truck when the child was struck. With respect to this instruction, rejection of testimony, and denial of amendment to the declaration as to where the truck was being driven, plaintiffs assign error. Without holding that, under all of the facts and circumstances of this case and the lateness of the motion to amend, these constituted reversible error, nevertheless, inasmuch as we are holding, for other reasons, that a new trial must be granted, we direct that the amendment should be allowed, if again sought well in advance of trial, the testimony on this matter should be received, and the said instruction omitted on retrial.

Another of defendant's employees was permitted to testify that, after the accident, he had called the child's mother to express his sympathy and that she then told him that they did not blame the driver and that the child had come out from behind a parked car. The mother was not a witness to the accident. She is not a party to nor has she any legal interest in the lawsuits. The child is not bound by admissions against interest made by her mother. The testimony was hearsay. On no conceivable ground was it admissible. It was prejudicial to plaintiffs' cases.

It should have been refused on plaintiffs' objection, weak though that may have been. Also received, over plaintiffs' objection, was the testimony of an 8-year-old boy living in plaintiffs' neighborhood, admitting that he remembered telling the deputies that the child had done this before and never stops to look. Contributory negligence of the 2-1/2-year-old child was not and could not be in issue. What she may have done on previous occasions could have no pertinence to the only questions in the case, namely, the driver's negligence, its proximate cause, and damages. It is urged as having been admissible for impeachment purposes, but the record discloses it could have had no such purpose. Its effect was prejudicial, entitling plaintiffs to a new trial.

The court charged the jury as follows:

"Now, drivers must notice persons in the street, of course. Drivers, however, need not watch others unless such persons evidence an intention to enter the street. The minute a person evidences any intention to enter the street, then the driver, of course, must pay attention until something happens that the law will then require him to assume from what he sees happening that that person is about to enter the street. Well, that is a perfectly practical rule anyway, if you stop to think. If when you are driving down Michigan avenue here in Kalamazoo, for example, you have to observe every person walking on the sidewalk and keep them in your view, goodness, you would hit somebody in the street where you should have been looking. But when that person on the sidewalk does something which a reasonable person would notice, would or should notice, that indicates he is about to step into the street, then your observation must be towards that person as well as what is in front of you to be seen."

It appears that the street on which the accident occurred is a lightly traveled residential street without

sidewalks and with lawns extending to the tarvia. Michigan avenue in the city of Kalamazoo is a busy, main thoroughfare. The use of the latter by way of illustration in negativing the duty of drivers to watch pedestrians on the sidewalks along a busy thoroughfare was unfortunate, indeed, tending to minimize the driver's duty, on a street with residential lawns extending right up to the pavement, to maintain a lookout, at least within the confines of the street, for the children which he knew had crossed the pavement in front of him. Aside from that, to the extent that this instruction represents an attempt to follow language in *Braxton* v. *Gazdecki*, 255 Mich 518, that language is equally unfortunate as applied to the facts in that and in this case. As this writer has already observed in *Kaiser* v. *Gooden*, 325 Mich 521, 527, about the *Braxton Case:*

"this Court affirmed the finding of the trial court, sitting as a trier of the facts without a jury, that defendant was not, as a matter of fact guilty of negligence. Our holding was, in effect, that the evidence did not preponderate against such finding of fact. In so holding this Court did not have occasion to, nor did it pass on the question of whether defendant should have been held to be free from negligence as a matter of law."

Applied to the case at bar, the language in *Braxton* should hardly afford the basis for jury instruction as to the law and its requirements for motorists' maintenance of a lookout for pedestrians on the streets. The gratuity in *Braxton* might more properly have emphasized that once a pedestrian does enter a street, as the child did both there and here, it is the duty of the motorist to see him and keep him in observation. Here the child, before being struck, walked on the pavement at least as far as from its

east edge to its center, 9–1/2 feet, before the driver saw her in front of him. It being the duty of the jury to determine whether the driver was guilty of negligence in not seeing her on the pavement before he did, the language from *Braxton* as to the absence of a duty to observe the child before she entered the street could only serve to confuse the jury. It should not be repeated on retrial.

Reversed. Remanded for new trial, with costs to plaintiffs.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.