EMPLOYMENT RELATIONS COMMISSION v CAFANA
CLEANERS, INC.

1. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—COURT
OF APPEALS—ORIGINAL PROCEEDING.

A petition for the enforcement of an Employment Relations
Commission order, filed in the Court of Appeals by the commission, is an original proceeding.

2. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—COMMISSION ORDERS—ENFORCEMENT—REVIEW—COURT OF APPEALS—
SUMMARY DISPOSITION—STATUTES.

Statutes place no time limit on filing petitions to enforce Employment Relations Commission orders and place a 20-day time
limit on petitions for review of commission orders; the Legislature intended to make sure that failure to file timely petitions
to review had no bearing on petitions to enforce; pursuant to
statute, the Court of Appeals may now process petitions to
enforce and timely petitions to review commission orders summarily on the record from the commission (MCLA 423.23[2][d],
423.23[2][e]; MSA 17.454[25][2][d], 17.454[25][2][e]).

3. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—COMMISSION ORDERS—ENFORCEMENT—EVIDENCE.

A petition to enforce an Employment Relations Commission order

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations § 1078.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1082.
[3] 48 Am Jur 2d, Labor and Labor Relations § 1091.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1068.
[5] 48 Am Jur 2d, Labor and Labor Relations § 1238.
[6] 48 Am Jur 2d, Labor and Labor Relations § 1350.
[7] 48 Am Jur 2d, Labor and Labor Relations § 1353.
[8] 48 Am Jur 2d, Labor and Labor Relations § 1352.
[9] 48 Am Jur 2d, Labor and Labor Relations §§ 577, 578.
[10] 48 Am Jur 2d, Labor and Labor Relations § 1192.
[11] 48 Am Jur 2d, Labor and Labor Relations § 1180.
[12] 48 Am Jur 2d, Labor and Labor Relations § 12.

should be denied where it is not supported by substantial, competent and material evidence on the whole record.

4. Labor Relations—Layoffs—Concerted Activities—Evidence—Burden of Proof.

The burden of proof, in a proceeding before the Employment Relations Commission charging layoff, is on the charging party; if such evidence is produced, the burden shifts to the employer to establish a justifiable reason for the layoff.

5. Labor Relations—Economics—Employee Discharge—Justification.

Economics may provide a justifiable reason for the discharge of an employee.

6. Labor Relations—Layoffs—Concerted Activities—Evidence—Justification.

A finding that employees were laid off because they concertedly asked for increased wages or benefits was not justified by the evidence where the evidence established only that two of the employees individually discussed the question of wages and benefits with the employer.

7. Labor Relations—Concerted Activities—Individuals—Grievances—Collective Bargaining Agreement.

An individual's complaint to his employer is considered concerted activity only if it can be considered a grievance filed pursuant to a collective bargaining agreement.

8. Labor Relations—Concerted Activities—Agitator—Employee Discharge—Statutes.

An employer is not prohibited from discharging an agitator even where the agitation relates to wages, hours, and terms and conditions of employment, unless the agitation was an effort to engage in concerted activity protected by statute (MCLA 423.8; MSA 17.454[8]).

9. Labor Relations—Labor Unions—Organization of a Business —Inferences.

The simple fact that a registered letter bearing the return address of a labor union has been sent to a business does not support an inference that the union is attempting to organize the business; furthermore, it is not permissible to pile an inference upon an inference in reaching a conclusion that a union was attempting to organize the employees of an establishment.

10. Labor Relations—Labor Unions—Employee Discharge—Dis-
crimination—Inferences.

An inference of discrimination may be based on the percentage of
discharged employees engaged in union activities where a
group of employees who are active in a union are discharged by
an employer; but, the inference is not available where the only
union activity involved was the signing of union cards and such
occurred clandestinely and off the employment site.

11. Witnesses—Administrative Law Judge—Credibility of Wit-
nesses—Evidence—Truthfulness.

An administrative law judge in a labor relations proceeding is in
the best position to evaluate the credibility of witnesses; never-
theless, where testimony is not disputed by any other hard
evidence beyond pure conjecture it is impermissible and im-
proper to rely upon the untruthfulness of the testimony of a
witness as establishing the truthfulness of an inverse factual
proposition.

12. Labor Relations—Witnesses—Employee Discharge—Evidence
—Impeachment—Inferences.

An employer's oath that employees' union membership or activity
was not a ground for their discharge must be subject to im-
peachment, substantial contradiction, or circumstances incon-
sistent with his positive sworn evidence on that exact point to
warrant an inference that union membership or activity was a
reason for the employees discharge.

Original action in the Court of Appeals. Submit-
ted January 24, 1977, at Lansing. (Docket Nos.
30631, 30632.) Decided March 1, 1977.

Petition by the Michigan Employment Relations
Commission and the Service and Production Divi-
sion, Amalgamated Clothing Workers of America,
AFL-CIO, for enforcement of a commission order
directing defendant, Cafana Cleaners, Inc., to rein-
state three discharged employees with back pay
and requiring a representation election after rein-
statement. Petition for order of enforcement de-
nied.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for plaintiff.

*Hampton, Snavely, Ranno, Lightbody & Girard,* for defendant.

Before: QUINN, P. J., and R. B. BURNS and M. F. CAVANAGH, JJ.

PER CURIAM. Plaintiff has petitioned this Court for an order enforcing the commission's order of November 7, 1975, which ordered defendant to reinstate three discharged employees with back pay and directing a representation election after the reinstatement. Defendant has answered the petition. The case was submitted to the Court on a special motion docket as a petition to enforce the order of MERC. Since *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 387 Mich 424; 196 NW2d 763 (1972), a petition for enforcement filed by MERC is an original proceeding in this Court and MERC, litigants and the Clerk of this Court should so treat it. We consider this petition as an original proceeding.

This case presents two issues:

1. What is the effect of MCLA 423.23(e) and (f); MSA 17.454(25)(e) and (f), as amended by 1976 PA 98, MCLA 423.23(2)(d) and (e); MSA 17.454(25)(2)(d) and (e), on the decisions in *Detroit Symphony, supra,* and *Michigan Employment Relations Commission v Reeths-Puffer School District,* 391 Mich 253; 215 NW2d 672 (1974)?

2. Should the enforcement order be granted?

*Detroit Symphony, supra,* invalidated the summary procedure employed by the Court of Appeals in handling enforcement petitions. As a result of that opinion and the opinion in *Reeths-Puffer, supra,* this Court was required to process enforce-

ment petitions on a formal submission with oral argument and opinion. This requirement is the key to the resolution of the first issue because it must be presumed that the Legislature had in mind the *Detroit Symphony* and *Reeths-Puffer* decisions on the former statute in enacting the amendment, *Evans v Ross,* 309 Mich 149; 14 NW2d 815 (1944). By adding the word "summarily" to MCLA 423.23(2)(d) and (e), we conclude that the Legislature intended to eliminate the requirements announced in *Reeths-Puffer* and reinstate summary disposition by the Court of Appeals.

Under former MCLA 423.23(e); MSA 17.454(25)(e), there was no direction that the Court of Appeals should grant summary relief and no time limit was set for seeking enforcement. Such a direction is contained in present MCLA 423.23(2)(d); MSA 17.454(25)(2)(d) but no time limit is set for seeking enforcement. Under former MCLA 423.23(f); MSA 17.454(25)(f), there was no time limit on filing a complaint for review. Present MCLA 423.23(2)(e); MSA 17.454(25)(2)(e) places a time limit of 20 days on petitions for review and contains the following final sentence:

"If a timely petition for review is not filed under this subdivision by an aggrieved party, the commission or any prevailing party shall be entitled, upon application therefor, to a summary order enforcing the commission's order."

What does this quoted sentence mean? Since there is no time limit on filing petitions to enforce and there is now a 20-day time limit on petitions for review, we conclude that the sentence means that the Legislature intended to make sure that failure to file timely petitions to review had no bearing on petitions to enforce.

Under the amended statute, the Court of Appeals is to process petitions to enforce and timely petitions to review orders of MERC summarily on the record from MERC. The grant or denial of a petition to enforce depends on that record containing competent, material and substantial evidence supporting the order of MERC.

Turning to the question of granting or denying the enforcement order, we conclude that it should be denied because the commission's decision and order is not supported by substantial, competent and material evidence on the whole record.

The administrative law judge, relying on previous MERC decisions, noted at the outset of his opinion that even if there were economic justification for the layoffs, if the layoffs were at least in part motivated by the employees' concerted actions to organize for improvement of their wages, hours and terms and conditions of employment, they would be unlawful in violation of § 8 of the labor mediation act protecting the employees' right to engage in lawful concerted activities. Federal precedent supports this statement of the law. *NLRB v Whitin Machine Works,* 204 F2d 883 (CA 1, 1953).

However, the burden of proof is on the charging party. *NLRB v Federal Pacific Electric Co,* 441 F2d 765 (CA 5, 1971). If such evidence is in fact produced, the burden shifts to the employer to establish a justifiable reason for the layoff. *Maphis Chapman Corp v NLRB,* 368 F2d 298 (CA 4, 1966). There is no question that economics may provide a justifiable reason for discharge. *J A Hackney & Sons, Inc v NLRB,* 426 F2d 943 (CA 4, 1970).

It thus appears that it was defendant's burden to produce his bookkeeper or other qualified person to explain the books of account and establish economic justification for the layoffs. Although the

books and records were in fact available at the second hearing, it was not the charging party's burden to introduce them. Accordingly, if the union established or introduced evidence to establish that the layoffs were at least in part unlawfully motivated, MERC's decision should be enforced.

However, it must be concluded that evidence of such unlawful motivation is either nonexistent or not substantial on the record taken as a whole. The administrative law judge concluded that the employer had laid off the employees "because they have concertedly asked for increased wages or benefits". No evidence in the record supports this conclusion. The evidence establishes only that two of the employees, Maupin and Harper, individually discussed the question of wages and benefits with defendant. An individual's complaint to his employer is considered "concerted activity" only if it can be considered a grievance filed pursuant to a collective bargaining agreement. *MERC v Reeths-Puffer School District, supra,* 391 Mich at 261 ff. Nothing prohibits an employer from discharging an "agitator" as defendant characterized Harper, even where the agitation relates to wages, hours, and terms and conditions of employment, unless the agitation was an effort to engage in concerted activity protected by the statute. Where the complaint is individualized, the activity can hardly be considered concerted. The finding of concerted activity is without support in the record.

Second, the administrative law judge, in findings adopted by the full commission, concluded that the employees were laid off because of their activities on behalf of the charging union, in violation of § 16(3) of the labor mediation act. The administrative law judge wrote:

"While the Employer denied knowledge of any Union

activities at the time the employees were laid off, I find that the Employer did have such knowledge and that the only reasonable explanation for the abrupt layoffs was the developing intent of the Union to organize the employees of the business. Brown admitted seeing the registered letters sent by the Union. Further the refusal by the Employer to receive or acknowledge any mail or telephone calls from the Union, or any other correspondence relating to the Union organizational attempt indicates a studied attempt on its part to avoid the appearance of an awareness of the organizational drive. I find that the employer's denial of knowledge of the Union activity taking place in its small place of business to be without merit."

The only evidence that the employer had any knowledge of the union organizational drive was Brown's confused testimony in which he stated that a registered letter bearing the return address of either the union or the Employment Relations Commission was brought to the business premises but not delivered because addressed to Jerry Cafagna (defendant) personally. However, it was the charging party that had the burden of proof, and it cannot be inferred from the simple fact that a registered letter has been sent bearing the return address of the union that that union is attempting to organize the addressee. In concluding that this provided evidence of the employer's knowledge of the organizational drive, the administrative law judge piled an inference upon an inference impermissibly. To reach this conclusion, the administrative law judge had to infer that Wade Brown recognized the letter as having been sent by a union, that he concluded that the union was attempting to organize the employees of the establishment, and that he communicated his conclusion to Jerry Cafagna, who further concluded that the three employees with former union member-

ship known to him were responsible for the organizational drive and should therefore be laid off. This chain of inferences is utterly without support in the testimony.

Similarly, there is no evidence of a "refusal by the Employer to receive or acknowledge any mail or telephone calls from the Union". The union representative testified simply that on several occasions he telephoned Cafana Cleaners and asked to speak to Jerry Cafagna, and was told that Cafagna was not in the plant at the time. The other testimony in the record showed that whatever employee, including the three aggrieved employees, was nearest the phone would answer the phone, so there is a strong indication that if Cafagna were present, whoever answered the phone would have reported this fact to the union representative and called Cafagna to the telephone. Accordingly, it is probably true that Cafagna was not at the cleaners when the union representative called; there is no law that requires the owner of a small business to be on the premises every hour the business is open. Again, the burden of proof was on the union, and it must negate reasonable inferences inconsistent with its theory of the case.

Although in some circumstances, where a group of employees, active in a union, is discharged by the employer, there may be a permissible inference of discrimination based on the percentage of discharged employees engaged in union activities, *Montgomery Ward & Co v NLRB,* 377 F2d 452 (CA 6, 1967), that inference is not available where the only union activity involved was the signing of union cards and such occurred clandestinely and off the employment site. *NLRB v Meinholdt Manufacturing, Inc,* 451 F2d 737 (CA 10, 1971), *Bill's Coal Co, Inc v NLRB,* 493 F2d 243, 247 (CA 10,

1974). Cafagna testified without contradiction that the employees he laid off were paid higher than average wages, and their replacements worked for lower wages. The record indicates that Wade Brown bought into the business and became a partner and that he took over the work of cleaning and spotting formerly done by Harper and the pressing done by Maupin. No reason appears to doubt this testimony, and the inference, if any, of antiunion animus in making the layoffs is thus rebutted.

The administrative law judge concluded that Cafagna was not telling the truth in denying knowledge of the union activity taking place in his "small place of business". Certainly, the administrative law judge is in the best position to evaluate the credibility of the witnesses. *Universal Camera Corp v NLRB,* 340 US 474; 71 S Ct 456; 95 L Ed 456 (1951), adopted in *MERC v Detroit Symphony Orchestra,* 393 Mich 116, 127; 223 NW2d 283 (1974). Nevertheless, Cafagna's testimony was not disputed by any other hard evidence beyond pure conjecture, and it is impermissible and improper to rely upon the untruthfulness of the testimony of a witness as establishing the truthfulness of an inverse factual proposition. *Boudeman v Arnold,* 200 Mich 162, 165; 166 NW 985 (1918).

Furthermore, Cafagna's testimony was first given when he was called as an adverse party and plaintiff was bound by his uncontradicted and unimpeached testimony. *Colvaruso v Stroh Brewery Co,* 301 Mich 245; 3 NW2d 261 (1942). An employer's oath that discharged employees' union membership or activity was not a ground for their discharge may not be disregarded because of suspicion that the employer may be lying, but there must be impeachment of him, substantial contra-

diction, or circumstances inconsistent with his positive sworn evidence on that exact point to warrant an inference that union membership or activity was a reason for the employees' discharge. *NLRB v Stafford,* 206 F2d 19 (CA 8, 1953).

The petition for an enforcement order is denied.