BYRNES v MECOSTA-OSCEOLA INTERMEDIATE SCHOOL
DISTRICT

Docket No. 63144. Submitted November 5, 1982, at Grand Rapids.—
Decided January 14, 1983.

Linda L. Byrnes, a bus driver for the Mecosta-Osceola Intermedi-
ate School District, was suspended and subsequently discharged
from her employment after her bus was damaged in a minor
mishap. Byrnes filed with the Michigan Employment Relations
Commission an unfair labor practice charge against the school
district, alleging that the real reason for her discharge was her
union activities. A hearing was held, after which the hearing
referee issued a decision recommending that Byrnes's charge be
dismissed. Byrnes filed exceptions to that decision, and the
commission subsequently rejected the referee's decision, finding
that she was discharged because of her union activity, and
ordered that Byrnes be reinstated to her former position with
back pay. The school district appealed to the Court of Appeals,
arguing that the commission's decision was not supported by
competent, material, and substantial evidence on the whole
record. *Held:*

It is impossible that a discharge was motivated in part by
antiunion bias where the employer had no knowledge of the
employee's union activity. There was no competent, material,
or substantial evidence to support a conclusion that the school
district knew of Byrnes's union activities before dismissing her.

Reversed.

1. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — UN-
FAIR LABOR CHARGES — BURDEN OF PROOF.

The burden of proof in a proceeding before the Employment
Relations Commission in which unfair labor charges are made
is upon the charging party.

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1752.
[2, 3] 48 Am Jur 2d, Labor and Labor Relations §§ 924, 1736.
Discharge of employee as reprisal or retaliation for union organiza-
tional activities. 83 ALR2d 532.

2. Labor Relations — Union Activity — Employee Discharge — Antiunion Bias.

It is impossible that an employee's discharge was motivated in part by antiunion bias where the employer had no knowledge of the employee's union activity.

3. Labor Relations — Union Activity — Inferences.

The small size of an employer's staff does not support an inference that the employer knew of union activities absent supporting evidence indicating that such activities were carried on at such a time or in such a manner that the employer must have noticed them.

*McCroskey, Feldman, Cochrane & Brock* (by *Eric C. Lewis)*, for plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S. Harty)*, for defendant.

Before: MacKenzie, P.J., and R. M. Maher and C. W. Simon,* JJ.

Per Curiam. Mecosta-Osceola Intermediate School District appeals as of right from a decision and order of the Michigan Employment Relations Commission which rejected the decision and recommended order of a hearing referee, found that Linda Lee Byrnes was unlawfully discharged as the result of her union activity, and ordered that plaintiff be reinstated to her former position with back pay. Defendant argues that the commission's decision was not supported by competent, material, and substantial evidence on the whole record as required by MCL 423.216(e); MSA 17.455(16)(e). Application of that standard requires this Court to conduct a qualitative and quantitative evaluation of all of the evidence and to determine whether it was such as a reasonable mind would accept as adequate to justify the conclusion reached. *Em-*

* Circuit judge, sitting on the Court of Appeals by assignment.

*ployment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 122-124; 223 NW2d 283 (1974).

Plaintiff has the burden of proving that her discharge was motivated at least in part by antiunion bias. *Employment Relations Comm v Cafana Cleaners, Inc,* 73 Mich App 752, 757; 252 NW2d 536 (1977); *Jeanette v Stadium Management Co,* 117 Mich App 240, 244; 323 NW2d 308 (1982). It is impossible that a discharge was motivated in part by antiunion bias where the employer had no knowledge of the employee's union activity. *NLRB v Century Broadcasting Corp,* 419 F2d 771, 777-778 (CA 8, 1969); *Jeanette, supra,* p 243.

The evidence showed that the school district employed only nine full-time bus drivers, including plaintiff, and considerable reliance was placed on this fact by the commission in inferring that defendant knew of plaintiff's union activities. However, the small size of an employer's staff does not support an inference that an employer knew of union activities absent supporting evidence indicating that such activities were carried on at such a time or in such a manner that the employer must have noticed them. *Amyx Industries, Inc v NLRB,* 457 F2d 904, 907 (CA 8, 1972); *Alumbaugh Coal Corp v NLRB,* 635 F2d 1380, 1384 (CA 8, 1980). Nothing in the record here indicates that plaintiff's union organizing activities were carried out on defendant's premises or were otherwise conducted in such a way that defendant must have been aware of her involvement.

Evidence showed that the bus superintendent was informed of a union organization meeting on the day before the accident which led to plaintiff's suspension, but was not informed of plaintiff's participation. Evidence also showed that the bus foreman received a complaint, after plaintiff's sus-

pension but before her dismissal, from a bus driver who told him that she was being pressured to sign a union card. However, there was no testimony that plaintiff's name was mentioned in this connection or that plaintiff was the only one soliciting signatures. For example, the testimony of bus driver Alice Brockway indicated that she also was involved in union organization. Plaintiff testified that she was questioned about why bus drivers wanted a union by a school board member with whom she had a private discussion, but nothing suggested that the board member knew that plaintiff herself was involved in the union or was an organizer. The commission placed considerable reliance on a supposed friendship between the superintendent's son and a bus driver, inferring that the bus driver must have told the superintendent's son that plaintiff was a union organizer and that the son must have, in turn, told his father. However, the superintendent denied that any such friendship existed and the only other testimony suggesting a friendship was that of plaintiff, who said that she supposed that the superintendent's son and the bus driver were friends because the bus driver had a business next door to the superintendent's son's house. This chain of inferences and suppositions is too tenuous to be given any weight. While the evidence shows that defendant knew of the union during the relevant time period, there was no evidence supporting a conclusion that defendant knew of plaintiff's involvement and organizational role in the union.

Finally, we note that the commission relied upon what it termed the "suspicious coincidence" of the accident which led to plaintiff's suspension and the union organization meeting the previous night. Unless the commission is suggesting that the accident was somehow deliberately caused by

defendant, a suggestion for which there is no support in the record, we fail to see how such a coincidence is suspicious or the relevance of such a coincidence to the issues presented.

On this record, we cannot say that there was competent, material, and substantial evidence to support a conclusion that defendant knew of plaintiff's union activities before dismissing her.

Reversed.