## MICHIGAN EMPLOYMENT RELATIONS COMMISSION v REETHS-PUFFER SCHOOL DISTRICT

### OPINION OF THE COURT

1. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—TERMINATION OF EMPLOYEE—CONCERTED ACTIVITIES.

As a general proposition the public employment relations act does not proscribe breach of a collective bargaining agreement or "unfairness"; an employee may be terminated for a good reason, bad reason, or no reason at all but an employee may not be discharged for exercising rights guaranteed by a section of that act which provides in part that "[i]t shall be lawful for public employees * * * to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection" (MCLA 423.209).

2. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—PUBLIC EMPLOYMENT RELATIONS ACT—ORDERS.

Michigan Employment Relations Commission was transformed by a 1965 public act into an agency akin to the National Labor Relations Board and empowered for the first time to enter a remedial order for violation of the public employment relations act (MCLA 423.201 *et seq.;* 1965 PA 379).

3. LABOR RELATIONS—NON-UNION EMPLOYEES—UNION EMPLOYEES—CONCERTED ACTIVITY—SCHOOLS AND SCHOOL DISTRICTS—COLLECTIVE BARGAINING AGREEMENT.

Non-union as well as union employees are protected from inter-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 12] 48 Am Jur 2d, Labor and Labor Relations §§ 1197, 1199, 1203.

[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1078, 1079.

[3] 48 Am Jur 2d, Labor and Labor Relations § 644.
   Discharge or other discriminatory treatment of employee pursuant to union security clause as within unfair labor practice provisions of Taft-Hartley Act, 36 ALR2d 630.

[4, 5, 7, 8, 13, 15] 48 Am Jur 2d, Labor and Labor Relations §§ 1193, 1194.

[9, 10, 14] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1196.

[11] 48 Am Jur 2d, Labor and Labor Relations § 392.

ference for engaging in "concerted activity"; thus, it is not decisive whether a substitute bus driver, who joined a union, was, as claimed by a school district, ineligible to join because she did not have regularly scheduled hours within the meaning of the collective bargaining agreement between the union and the school district.

4. LABOR RELATIONS—EMPLOYEES—GRIEVANCE.

An employee may, in connection with the prosecution of a good faith grievance employ reasonable, nonabusive methods of obtaining information necessary to prosecute the grievance.

5. LABOR RELATIONS—EMPLOYEES—SENIORITY—GRIEVANCE.

Every employee who alleges a violation of his seniority rights asserts basically that someone else has obtained a benefit that belongs to him; an employee has protected access to the grievance machinery without regard to the disinterest or opposition of other employees.

6. LABOR RELATIONS—DISCHARGE OF EMPLOYEE—COLLECTIVE BARGAINING AGREEMENT.

An employee may not be discharged for attempting in good faith to enforce a right claimed under a collective bargaining agreement.

7. LABOR RELATIONS—GRIEVANCE—MERIT—BAD FAITH—MALICE—DISCHARGE OF EMPLOYEE.

Grievants who fail in the prosecution of their grievances are protected from discharge, except, possibly, if the grievance is without arguable merit or is advanced in bad faith or with malice.

8. LABOR RELATIONS—SUBSTITUTE BUS DRIVER—COLLECTIVE BARGAINING AGREEMENT—GRIEVANCE—SCHOOLS AND SCHOOL DISTRICTS.

A substitute bus driver had a reasonable basis in a collective bargaining agreement for asserting her grievance where the agreement covers nonteaching employees of a school district, including bus drivers, who have regularly scheduled hours and the driver during her stint as a substitute driver did have definite hours—a certain time each morning, a time each afternoon, five days a week.

9. LABOR RELATIONS—SCHOOLS AND SCHOOL DISTRICTS—DEFENSES—GOOD FAITH—CONCERTED ACTIVITY.

A school district's good faith is not a defense to the discharge of an employee for engaging in lawful concerted protected activity.

10. LABOR RELATIONS—PLEADING—COMPLAINT—PREJUDICE—SCHOOLS AND SCHOOL DISTRICTS—DISCHARGE OF EMPLOYEE.

The fuzziness of the wording in a substitute bus driver's complaint against a school district, filed with the Labor Mediation Board, did not prejudice a full and fair presentation of the facts and the issues where there is no factual dispute concerning the reason for her discharge.

11. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—APPEAL AND ERROR—COURTS.

A petition for enforcement filed by the Michigan Employment Relations Commission pursuant to a statute is an original proceeding in the Michigan Court of Appeals and such petitions are to be considered by the Court of Appeals with the due deliberation of a calendared case, including opinion of the panel of the Court to which the case is assigned; such a petition invokes the jurisdiction of the Court of Appeals as of right and is not addressed to the discretion of the Court of Appeals; it was not intended that this reviewing power would be exercised summarily without formal submission, oral argument and opinion (MCLA 423.23[e]).

DISSENTING OPINION

M. S. COLEMAN, J.

12. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—CONCERTED ACTIVITIES—COLLECTIVE BARGAINING—DISCHARGE OF EMPLOYEE—SUSPENSION OF EMPLOYEE.

*The public employment relations act prevents an employer from interfering when public employees "engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection", such activities are protected, but not every act is sanctioned, it must be concerted group activity directed, in part, toward "bargaining or other mutual aid and protection"; activities furthering a group rather than an individual interest will generally be considered concerted, and actions justifying discharge or suspension for cause are not protected (MCLA 423.209).*

13. LABOR RELATIONS—SCHOOLS AND SCHOOL DISTRICTS—SUBSTITUTE BUS DRIVER—DISCRIMINATION—GRIEVANCE—UNION ACTIVITY—TERMINATION OF EMPLOYMENT—PUBLIC EMPLOYMENT RELATIONS ACT—CONCERTED ACTIVITIES.

*A substitute bus driver's activities, subsequent to the filing of a grievance against the school district by which she was employed, which resulted in her employer terminating her em-*

ployment because she was harassing other bus drivers at the. job and at home do not merit the protection of the public employment relations act; her actions did not institute or implement any group action, there is no intimation of a "common cause" or "solidarity" between the bus driver and her coworkers, if anything, her actions ruptured the bonds of common cause, she was not discharged for filing the grievance or for union activity or membership, she was discharged because her actions exceeded the permissible gathering of information in support of her grievance, she did not communicate to develop facts but to complain, coerce and intimidate, and those activities do not warrant protection and those activities furnish ample cause for discharge (MCLA 423.201 et seq.). '

14. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—FINDINGS OF FACT—EVIDENCE.

Michigan Employment Relations Commission's findings of fact were not supported by competent, material and substantial evidence on the record considered as a whole where its orders said that a substitute school bus driver was dismissed for reasons which do not appear on the record because that statement simply does not reflect the facts and the commission said defendant used telephone calls as an excuse for terminating the driver and that statement is without testimonial basis and is unwarranted, unsupported speculation (MCLA 423.216[d]).

15. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—EVIDENCE—DISCHARGE OF EMPLOYEE—CONCERTED ACTIVITY—GRIEVANCE—RECORD—STATUTES.

The record must support "by competent, material and substantial evidence" a Michigan Employment Relations Commission conclusion "that the [discharged employee's] activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint" and this conclusion is not supplied solely by the employee's filing of a grievance (MCLA 423.216[d]).

Appeal from order of Court of Appeals, Division 1, V. J. Brennan, P. J., and J. H. Gillis and O'Hara, JJ., granting petition for order of enforcement. Submitted September 5, 1973. (No. 8 September Term 1973, Docket No. 54,450.) Decided March 19, 1974. Rehearing denied April 16, 1974.

Petition in the Court of Appeals by Michigan Employment Relations Commission for enforcement of its order against Reeths-Puffer School District. Petition granted. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for plaintiff.

*Street, Stevens, Schuler, Johnson, Hipkiss, Piasecki & Knowlton,* for defendant.

Levin, J. The question presented is whether the public employment relations act (PERA)[1] protects a public employee from discharge by his governmental employer for action taken by the employee in the prosecution of a grievance, filed with the employer, alleging a right under a collective bargaining agreement.

The defendant Reeths-Puffer School District, a public employer, appeals from a decision of the Court of Appeals enforcing an order of the Michigan Employment Relations Commission. The MERC order directs the school district to restore plaintiff Wilma Wilder, a public employee, to the status of a substitute bus driver and reimburse her back pay in a yet undetermined amount.

Mrs. Wilder was hired by the school district and in September, 1968, began work as a substitute school bus driver. She desired a permanent position. When other drivers, junior in seniority, were offered permanent positions, she complained and eventually filed a grievance asserting that such offers were in derogation of her seniority rights under the collective bargaining agreement.

During the pendency of her grievance, Mrs.

[1] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

Wilder communicated by telephone with the other drivers (whose appointment to permanent positions formed the basis for her grievance) seeking information which would enable her to prosecute her grievance effectively. The school district interpreted these communications as harassment of the other drivers and advised Mrs. Wilder that she would no longer be called as a substitute driver. She, in effect, was discharged.

Mrs. Wilder filed unfair labor charges against the union and the school district.[2]

The trial examiner found that Mrs. Wilder had been discharged for engaging in "lawful concerted activity"[3] protected under § 9 and ordered reinstatement and back pay. He found that she had been discharged "not for having filed a grievance, but because of the telephone calls the charging party [Mrs. Wilder] made to other employees. In the opinion of the undersigned these telephone calls were inextricably related to the grievance that the charging party had filed relative to her treatment as a substitute bus driver."

The examiner dismissed the grievance against the union on the ground that it did not state a cause of action under the act. Mrs. Wilder did not file exceptions to that determination.

The school district filed exceptions with MERC which adopted the pertinent findings of the examiner and issued an order incorporating his recommendations.

Upon MERC's petition, the Court of Appeals ordered enforcement. We affirm.

I

As a general proposition PERA does not pro-

---

[2] The charges were filed with MERC's predecessor, the Labor Mediation Board.

[3] MCLA 423.209; MSA 17.455(9).

scribe breach of a collective bargaining agreement or "unfairness"; an employee may be terminated for a "good reason, bad reason, or no reason at all".[4] But an employee may not be discharged for exercising rights guaranteed by § 9 of the act.[5]

Section 10 of the act provides that it shall be unlawful for a public employer "to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9".[6] Section 9 provides that "[i]t shall be lawful for public employees * * * to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection".[7]

These provisions enlarging the rights of public employees were added to the Hutchinson Act[8] by 1965 PA 379. They adopt word-for-word the analogous provisions of the National Labor Relations Act. Thereby, MERC was transformed into an agency akin to the NLRB and empowered for the

[4] *National Labor Relations Board v Century Broadcasting Corp,* 419 F2d 771, 778 (CA 8, 1969).

Of course a discharge lawful under PERA may violate other rights of an employee, *e.g.* under the collective bargaining agreement or under the Fair Employment Practices Act, MCLA 423.301 *et seq.;* MSA 17.458(1) *et seq.*

[5] MCLA 423.209; MSA 17.455(9).

[6] MCLA 423.210; MSA 17.455(10).

[7] Section 11 provides that "any individual employee at any time may present grievances to his employer and have the grievances adjusted, without the intervention of the bargaining representative, if the adjustment is not inconsistent" with the collective bargaining agreement and the bargaining representative has been given an opportunity to be present at the adjustment. MCLA 423.211; MSA 17.455(11).

This section has been held to permit an employer to negotiate directly with an individual grievant without violating MCLA 423.210, 423.215; MSA 17.455(10), 17.455(15), which proscribe unfair labor practices and evasion of collective bargaining agreements, but not to obligate an employer to process such a grievance. *See Mellon v Board of Education of the Fitzgerald Public Schools,* 22 Mich App 218; 177 NW2d 187 (1970).

[8] 1947 PA 336; MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

first time to enter a remedial order for violation of the act.[9]

## II

This appeal presents questions concerning the construction of the act not previously addressed by this Court. There are abundant decisions of the NLRB and the United States Courts of Appeals and the Supreme Court of the United States construing comparable provisions of the NLRA. The parties have relied on and we may appropriately look to the Federal precedents for guidance.[10]

The United States Supreme Court has applied the comparable provisions of the Federal Act to protect nonunion as well as union employees from interference for engaging in "concerted activity".[11] Thus, it is not decisive whether Mrs. Wilder, who joined the union, was, as claimed by the school district, ineligible to join because she, a substitute driver, did not have "regularly scheduled hours" within the meaning of the collective bargaining agreement between the union and the school district.

The school district relies on *Mushroom Transportation Co v National Labor Relations Board,* 330 F2d 683, 685 (CA 3, 1964), where the Third Circuit held that an employee was not engaged in

---

[9] *See* Kahn, *Labor Law: A Michigan Practitioner's Guide* § 2.2, pp 100–101; Walsh, *Michigan Labor-Management Relations Law Past and Present,* 44 J Urban L 89, 93–94 (1966).

[10] *See Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), where this Court, noting the similarity in language between provisions of PERA and provisions of NLRA, relied on Federal precedents.

[11] *National Labor Relations Board v Washington Aluminum Co,* 370 US 9; 82 S Ct 1099; 8 L Ed 2d 298 (1962). *Similarly, see Hugh H Wilson Corp v National Labor Relations Board,* 414 F2d 1345, 1347 (CA 3, 1969); *National Labor Relations Board v Schwartz,* 146 F2d 773, 774 (CA 5, 1945); *Joanna Cotton Mills Co v National Labor Relations Board,* 176 F2d 749, 752 (CA 4, 1949); *National Labor Relations Board v Serv-Air, Inc,* 401 F2d 363, 365 (CA 10, 1968).

protected activity when he conversed with other employees about alleged employer failure to observe the union contract. In so holding the Court said that such activity is protected only if it is "engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees". The *Mushroom* Court carefully noted that the discharged employee had not filed a formal grievance and referred to his conversations with other employees as "mere 'griping.' "

The NLRB and United States Courts of Appeals have held, however, that the filing of a *grievance* by even a single employee constitutes protected concerted activity.[12] In holding that an employee may not be discharged for the filing of a grievance, the NLRB and the Courts of Appeals have rejected arguments that the filing of an individual grievance is not "concerted" activity for the purpose of "collective" negotiation or bargaining or other "mutual" aid and protection. They reasoned that a person who in good faith asserts an individual grievance based on a provision of a collective bargaining agreement should be protected because "the collective bargaining agreement is the result of concerted activities by the employees for their mutual aid and protection".[13]

---

[12] *New York Trap Rock Corp,* 148 NLRB 374, 375–376 (1964); *National Labor Relations Board v Bowman Transportation, Inc,* 314 F2d 497, 498 (CA 5, 1963); *Socony Mobil Oil Co v National Labor Relations Board,* 357 F2d 662, 663–664 (CA 2, 1966); *Crown Central Petroleum Corp v National Labor Relations Board,* 430 F2d 724, 729 (CA 5, 1970); *National Labor Relations Board v Selwyn Shoe Manufacturing Corp,* 428 F2d 217, 221 (CA 8, 1970).

[13] *National Labor Relations Board v Selwyn Shoe Manufacturing Corp, supra.*
*Similarly:*
"When an individual employee attempts to enforce a provision of a collective bargaining agreement, he is asserting a 'collective' right under a collective contract. Although an individual employee, in processing his complaint based upon a contractual provision, might be

Since Mrs. Wilder had filed a formal grievance before she made the phone calls to the other drivers there is no need in this case to decide the extent of the protection provided employees who voice complaints or gripes which have not yet ripened into a formal grievance.[14]

### III

Turning to the facts of this case, we consider MERC's finding and conclusion that Mrs. Wilder's telephone calls to other drivers were so "inextricably related" to the filing of her grievance that the telephone calls, too, constituted activity protected by the act.

The school district expected Mrs. Wilder, in accordance with its established practice, to remain on the substitute run assigned to her in September until the regular driver returned in November. The practice of not considering substitutes for permanent openings was adopted by the school district to avoid frequent shifting of drivers and resulting disruption of school bus schedules. Mrs.

concerned primarily with accomplishing a result which will benefit him personally, his success will redound to the direct benefit of all employees similarly situated. In the instant case, Davis [the discharged employee] was concerned primarily with convincing Rose [employer's representative] that *he* was entitled to the holiday pay under the collective bargaining agreement. However, Davis was, in effect, representing all other probationary employees (both present and future) for, if successful, his efforts would benefit this class of persons." (Emphasis by author.) *National Labor Relations Board v Northern Metal Co,* 440 F2d 881, 888 (CA 3, 1971), per Biggs, J., dissenting.

[14] *See C & I Air Conditioning, Inc,* 193 NLRB 911 (1971), where the Board found that an individual's complaint seeking to implement a right claimed under a collective bargaining agreement was protected activity even though a formal grievance was not filed. *See, also,* Note, *Constructive Concerted Activity and Individual Rights: The Northern Metal-Interboro Split,* 121 U Pa L Rev 152 (1972); Case Note, 13 B C Ind & Com L Rev 176 (1971).

Wilder was advised that she would not be considered for a regular position even if one were to become available during her tenure as an assigned substitute. It was during this period that several drivers who had no prior service with the school district were given regular runs.

After Mrs. Wilder became a member of the union, she complained to Jack Moore, the bus supervisor for the school district, about her inability to secure a permanent position. Failing in this approach she spoke to Larry Duell, the Association's president. Upon Duell's recommendation, on November 8, following the procedure outlined in the collective bargaining agreement, she filed a written grievance requesting a regular run.

Duell presented Mrs. Wilder's grievance to Moore, who did not then dispute her right to file a grievance, but dismissed it on the merits.

Under the terms of the collective bargaining agreement, rights accrue only to employees with "regularly scheduled hours". The school district maintained that Mrs. Wilder's hours as a substitute driver were not regularly scheduled and she did not enjoy rights under the agreement.

The union's dissatisfaction with Moore's response resulted in a meeting on November 18 with the school grievance committee. The grievance was not resolved at this meeting, but it was agreed that there would be further discussions regarding the status of substitute drivers under the collective bargaining agreement.

During the meeting, both Moore and Duell discussed complaints they had received from other drivers regarding Mrs. Wilder's telephone calls. Nevertheless, Moore said that Mrs. Wilder would continue to be called as a substitute driver. Yet on December 2, Moore informed Mrs. Wilder that she

would no longer be called because of complaints from other drivers about her telephone calls.

The trial examiner found that the calls were made by Mrs. Wilder "when preparing her grievance" and concluded that the calls were "protected concerted activity".

To effectively prosecute her grievance, Mrs. Wilder needed certain information: when were these other drivers hired, what had been their prior work experience for the district, the procedures followed in hiring them for permanent positions. She obtained this information by telephoning the other drivers, some of whom she had known for a number of years.

It would be incongruous to hold that Mrs. Wilder had a protected right to file a grievance, but was subject to summary discharge for seeking information which would enable her effectively to present the grievance. An employee may, in connection with the prosecution of a good faith grievance, employ reasonable, nonabusive, methods of obtaining information necessary to prosecute the grievance.

The school district argues that Mrs. Wilder, who avowedly sought the jobs of the other drivers, could not by telephoning them engage in "lawful concerted activities". These other drivers, the "target" of Mrs. Wilder's grievance, were against, if not hostile to, her position.

The school district asserts that Kathy Stolzman, one of the bus drivers telephoned by Mrs. Wilder, felt her job "threatened" by Mrs. Wilder's telephone call. We discern no distinction between this "threat" and the threat inherent in any similar grievance asserting that someone was granted preferred status in derogation of another's seniority rights. We would view the situation differently if

MERC had found that Mrs. Wilder had threatened physical violence.[15]

Every employee who alleges a violation of his seniority rights asserts basically that someone else has obtained a benefit that belongs to him. An employee has protected access to the grievance machinery without regard to the disinterest or opposition of other employees.[16]

We hold that an employee may not be discharged for attempting in good faith to enforce a right claimed under a collective bargaining agreement.

## IV

The school district asserts as a defense that Mrs. Wilder was not entitled to a regular bus run.

If an employee could be discharged for filing an unsuccessful grievance, filing would become hazardous indeed. Grievants who fail in the prosecu-

---

[15] *Cf. Corriveau & Routhier Cement Block, Inc v National Labor Relations Board,* 410 F2d 347 (CA 1, 1969), where the Court denied enforcement of the Board's order to reinstate workers who had made threats of violence against a fellow employee.

*See, also, Falcon Plastics—Division of B-D Laboratories, Inc v National Labor Relations Board,* 397 F2d 965, 967 (CA 9, 1968); *National Labor Relations Board v Hartmann Luggage Co,* 453 F2d 178, 184-185 (CA 6, 1971); *Hugh H Wilson Corp v National Labor Relations Board,* 414 F2d 1345, 1355-1356 (CA 3, 1969): "[A]s long as the activities engaged in are lawful and the character of the conduct is not *indefensible* in the context of the grievance involved, the employees are protected" (emphasis by the Court); *National Labor Relations Board v Leece-Neville Co,* 396 F2d 773, 774 (CA 5, 1968); *National Labor Relations Board v Ben Pekin Corp,* 452 F2d 205, 207 (CA 7, 1971).

"[N]ot every impropriety committed during such [protected] activity places the employee beyond the protective shield of the act. The employee's right to engage in concerted activity may permit some leeway for impulsive behavior, which must be balanced against the employer's right to maintain order and respect." *National Labor Relations Board v Thor Power Tool Co,* 351 F2d 584, 587 (CA 7, 1965).

[16] *Cf. National Labor Relations Board v Interboro Contractors, Inc,* 388 F2d 495, 500 (CA 2, 1967).

tion of their grievances are protected from discharge,[17] except, possibly, if the grievance is without arguable merit or is advanced in "bad faith" or with "malice."[18]

Mrs. Wilder had a reasonable basis in the collective bargaining agreement for asserting her grievance. The agreement covers nonteaching employees, including bus drivers, who have "regularly scheduled hours". Mrs. Wilder during her stint as a substitute driver did have definite hours —a certain time each morning, a time each afternoon, five days a week. The union's request that she become a member and acceptance of her dues indicates that it thought she had "regularly scheduled hours". Article IV of the collective bargaining agreement states:

"Seniority. All job openings will be posted for three days, and bid on according to qualifications and seniority. Seniority will take precedence when the qualifications are equal or better."

## V

The school district's good faith is not a defense. In *National Labor Relations Board v Burnup & Sims, Inc,* 379 US 21, 23–24; 85 S Ct 171; 13 L Ed

[17] See *National Labor Relations Board v Halsey W Taylor Co,* 342 F2d 406, 408 (CA 6, 1965), where the Court enforced the Board's reinstatement of an employee discharged for asserting a grievance: "We are not concerned in this case with the merit or lack of merit of [the employee's] grievance." *See, also, National Labor Relations Board v John Langenbacher Co,* 398 F2d 459, 462–463 (CA 2, 1968); *National Labor Relations Board v Ben Pekin Corp,* 452 F2d 205, 206 (CA 7, 1971).

[18] *Cf. Socony Mobil Oil Co v National Labor Relations Board,* 357 F2d 662, 663–664 (CA 2, 1966) (grievance asserted in good faith and not out of malice is protected activity); *Joanna Cotton Mills Co v National Labor Relations Board,* 176 F2d 749, 753 (CA 4, 1949) (Court held circulation of petition enumerating grievances not protected because purpose of grievance had "no relations to collective bargaining, hours, or conditions of work").

2d 1 (1964), the employer had discharged two employees who were organizing the other employees in the erroneous but good faith belief that the two had threatened violence to achieve their goals. The Supreme Court said:

"A protected activity acquires a precarious status if innocent employees can be discharged while engaging in it, even though the employer acts in good faith. It is the tendency of those discharges to weaken or destroy the § 8(a)(1) right that is controlling."[19]

## VI

The school district maintains that Mrs. Wilder's failure to refer specifically to "concerted activity" in her complaint deprived it of notice of the charge it was called upon to defend. The school district asserts further that the issue of Mrs. Wilder's concerted activity was not litigated at the hearing but evolved "strictly as an afterthought" by the trial examiner.

The charge filed by Mrs. Wilder with MERC alleged that the school district engaged "in unfair labor practices within the meaning of Section(s) 10 & 11 of said Act".[20] Although § 10 refers to § 9 rights, we agree that the wording of the charge is

[19] Section 10 of PERA corresponds to § 8(a)(1) of the NLRA.

*Similarly, see Welch Scientific Co v National Labor Relations Board,* 340 F2d 199, 203 (CA 2, 1965); *National Labor Relations Board v Serv-Air, Inc,* 401 F2d 363, 366 (CA 10, 1968); *Crown Central Petroleum Corp v National Labor Relations Board,* 430 F2d 724, 729 (CA 5, 1970).

[20] LMB and now MERC's policy with respect to the filing of an unfair labor charge differs from the Federal counterpart. MERC sets the case for hearing upon the individual's filing of the charge unless it is patently frivolous or fails to state a cause of action. MERC does not, as does the national board, first investigate and then decide whether to dismiss the charge or issue a complaint. The charging party, and not MERC, has the burden of establishing the unfair labor practice. Howlett, *Michigan's New Public Employment Relations Act,* 45 Mich State B J 12, 16 (1966).

not enlightening as to the particular conduct charged against the school district. If the reason for Mrs. Wilder's discharge were in dispute, her failure to frame the charge with greater particularity might require reversal or a remand to MERC for the taking of additional evidence.

However, the school district justified Mrs. Wilder's discharge on the ground that she had made harassing phone calls to other drivers. There is no factual dispute concerning the reason for her discharge.[21] The fuzziness of the wording in her complaint did not prejudice a full and fair presentation of the facts and the issues.

The trial examiner's decision was not an afterthought. The examiner stated at the outset of the hearing that the charge alleged on its face a discriminatory action by the school board "apparently because [Mrs. Wilder] attempted to exercise some concerted activity guaranteed by the act in regard to the contractual provision".

VII

In this case the Court of Appeals ordered

---

[21] The school district asserts that to establish an unlawful discharge the employee must prove that the employer definitely knew the employee was engaged in a protected activity and discharged the employee for that reason.

The employer's knowledge of the employee's activities is relevant where there is an issue concerning the reason for the employee's discharge. *See, e.g., National Labor Relations Board v Century Broadcasting Corp,* 419 F2d 771, 777 (CA 8, 1969); *National Labor Relations Board v Office Towel Supply Co,* 201 F2d 838, 840 (CA 2, 1953). Here there is no factual dispute concerning the reason for Mrs. Wilder's discharge.

The protection of the employee's right to engage in lawful concerted activity is not dependent on the employer having absolute knowledge that the activity is protected. *See Texas Aluminum Co v National Labor Relations Board,* 435 F2d 917, 919 (CA 5, 1970) (employer's knowledge of employee's concerted activity "may be inferred from circumstantial evidence"); *National Labor Relations Board v Office Towel Supply Co, supra* ("[I]f an employer, *having knowledge of the pertinent facts,* violates the Act, his motives are irrelevant." [Emphasis supplied.])

MERC's order enforced without formal submission or opinion following submission on the Court's weekly motion docket of MERC's petition and the school district's response.

The school district moved for a rehearing on the ground that the procedure followed did not comply with this Court's decision in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 387 Mich 424; 196 NW2d 763 (1972). The application for rehearing was denied.

In *Detroit Symphony,* this Court pointed out that a petition for enforcement filed by MERC pursuant to § 423.23(e)[22] is an original proceeding in the Court of Appeals and indicated that such petitions are to be considered by the Court of Appeals with the due deliberation of a calendared case, including opinion of the panel of the Court to which the case is assigned:

"By virtue of its original importance, it deserves as suggested in the cases cited below a compendious if not formal opinion of the legislatively appointed court of original jurisdiction. The need for such an opinion is apparent, for as said in one of the earlier Supreme Court cases *(Virginian R Co v United States,* 272 US 658, 675; 47 S Ct 222; 71 L Ed 463, 472 [1926]):

" 'The failure to accompany the decree by an opinion may thus deprive litigants of the means of exercising a sound judgment on the propriety of an appeal. And the appellate court, being without knowledge of the grounds of the decision below, is denied an important aid in the consideration of the case, and will ordinarily be subjected to much unnecessary labor.' " *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc, supra,* p 429.

---

[22] MCLA 423.23(e); MSA 17.454(25) (e).

A petition for enforcement under § 423.23(e)[23] invokes the jurisdiction of the Court of Appeals as of right. In contrast with a complaint for mandamus or superintending control, which original proceedings are considered by the Court of Appeals at least initially as motions, a petition for enforcement is not addressed to the discretion of the Court of Appeals.

The act provides that, upon the filing of such petition,[24] the Court of Appeals "shall" have jurisdiction of the proceeding and "shall" grant such relief as "it deems just and proper, enforcing, modifying, enforcing as so modified, or setting aside" the MERC order. It was not intended that this reviewing power would be exercised summarily without formal submission, oral argument and opinion.

While in this case we have reached and decided on the merits the school district's assignments of error without formal submission, oral argument and opinion by the Court of Appeals, we anticipate in future cases there will be full consideration by the Court of Appeals before consideration by this Court on the merits.

Affirmed. No costs, a public question.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with LEVIN, J.

M. S. COLEMAN, J. *(dissenting).* I must dissent because I do not believe that the public employment relations act prohibits an employer from dismissing an employee under these facts. Further, in my opinion the decisions below are not sup-

---

[23] And, *similarly,* upon filing of a complaint for review under MCLA 423.23(f); MSA 17.454(25)(f).

[24] Or upon filing of a complaint for review (see fn 23).

ported by competent, material and substantial evidence in the record considered as a whole. Precedent is established whereby harassment of other employees can be labeled "an attempt to perfect a grievance".

## FACTS

On January 2, 1969, Wilma Wilder filed a complaint charging defendant with violating provisions of the public employment relations act (PERA). Mrs. Wilder alleged, in part, that the employer had discriminated against her "because she attempted to exercise rights guaranteed by law".

Defendant replied that Mrs. Wilder had been hired as a substitute bus driver until the return of the regular driver. She subsequently "began to agitate to be assigned as a regular bus driver to a regular bus run". Defendant said Mrs. Wilder's actions created "confusion and moral [sic] problems". Defendant concluded that Mrs. Wilder's actions "were so inimical to the bus service that it was decided to no longer use her as a substitute driver".

A hearing was held on January 28, 1969. Mrs. Wilder testified that her supervisor said she would no longer be called upon to substitute because other drivers had complained about her. The supervisor said Mrs. Wilder "was harassing the drivers" by approaching them both on the job and at home. The president of the involved union felt Mrs. Wilder was an agitator. At one point he declined to represent her at a meeting because of "harassment that I had got for a month—the phone calls" from Mrs. Wilder.

The supervisor testified under oath, as follows:

"*Q.* * * * Did the fact that Mrs. Wilder had processed a grievance have anything to do with your dispensing with her services?

"*A.* It certainly did not.

"*Q.* For what reasons did you dispense with her services?

"*A.* Because of the problems she was causing these drivers; that they were calling me and complaining to me that—I guess they were being harassed by Mrs. Wilder to the point where they didn't know whether the job was worth it. They were just in training, new drivers, and being involved in union problems, they didn't like this.

"*Q.* That was the only reason?

"*[A.]* Yes."

When questioned by the trial examiner, the supervisor told of the complaints he had received about Mrs. Wilder's actions:

"*Mr. Bixler:* I have one question. Please feel free to object. You say you have dispensed with the services of Mrs. Wilder because she was calling up bus drivers?

"*A.* She was causing me problems with other bus drivers.

"*Q.* Now, these bus drivers related things to you, is that correct?

"*A.* Yes.

"*Q.* What was the jest *[sic]* of what they related Mrs. Wilder said to them, what was it?

"*A.* To me, I took it as a complaint. They called and told me about these calls they were receiving—threatening. Well, Mrs. Stolzman's job was threatened; she said she was going to get that.

* * *

"*Q.* What did Mrs. Elliott relate to you?

"*A.* She was disturbed that Wilma had approached her on the bus—at the school on the job, and that she bothered her at home.

"*Mr. Bixler:* What did she say about that?

"*A.* Questioning whether she had been hired, whether

she had signed anything, and relating her problems and that she had been—felt she had been mistreated. She didn't care to get involved in these things.

"*Mr. Bixler:* Who else besides Mrs. Elliott and Mrs. Stolzman?

"*A.* Mrs. Dora Morehouse approached me on the job at the junior high school and told me Mrs. Wilder had called her and discussed her problems and her grievances, and that she had felt she had been mistreated.

"*Mr. Bixler:* Who did she call?

"*A.* Dora Morehouse.

"*Mr. Bixler:* Any others?

"*A.* Mrs. Bollenbach told me on the job that she'd been getting calls, and she was sick and tired of it and she was threatened she was going to be taken to court.

"*Mr. Bixler:* Did she say anything else about what the calls were about?

"*A.* She didn't go into great detail, just related that she had called and was discussing her problem that she had been mistreated."

The trial examiner's decision was filed February 27, 1969. It said filing a grievance pursuant to a collective bargaining agreement was concerted activity. As such, PERA prohibited the employer "from taking any action that would interfere, restrain or coerce public employees when so doing". He found that Mrs. Wilder was not discharged for filing the grievance, but for telephoning other employees. He felt this was "inextricably related to the grievance" and "amounted to protected concerted activity".

The Michigan Employment Relations Commission (MERC) sustained the examiner's finding and order. It said the telephone calls were part of Mrs. Wilder's effort to process her own grievance.

"The testimony leads to the conclusion that the school officials, for reasons which do not appear on the record, decided to use the telephone calls as an excuse

for terminating Wilder. Wilder, in making the tele-
phone calls, was engaging in a protected activity, i.e.,
the filing of a grievance protesting the failure of the
School District to assign her a regular school bus run."

The Court of Appeals, by a 2–1 vote, granted
MERC's petition for enforcement of its order on
July 20, 1972. Leave to appeal was granted by this
Court on December 28, 1972.

## STATUTES

Defendant was found to have violated MCLA
423.210(a); MSA 17.455(10)(a), which reads:

"It shall be unlawful for a public employer or an
officer or agent of a public employer (a) to interfere
with, restrain or coerce public employees in the exercise
of their rights guaranteed in section 9 * * * ."

The rights guaranteed are found in MCLA
423.209; MSA 17.455(9):

"It shall be lawful for public employees to organize
together or to form, join or assist in labor organizations,
to engage in lawful concerted activities for the purpose
of collective negotiation or bargaining or other mutual
aid and protection, or to negotiate or bargain collect-
ively with their public employers through representa-
tives of their own free choice."

Section 16 of PERA (MCLA 423.216; MSA
17.455[16]) provides remedies for violations of § 10.
Subsection (b) permits MERC to issue cease and
desist orders. MERC may also require affirmative
action. MERC may not require reinstatement of an
employee who "was suspended or discharged for
cause." Subsection (d) provides for court enforce-
ment of MERC orders. It says findings of fact shall
be conclusive "if supported by competent, material

and substantial evidence on the record considered as a whole".[1]

## ISSUES

1. Does PERA prohibit an employer from discharging an employee for any action taken by the employee subsequent to the filing of a grievance against the employer?

2. Is the decision of MERC supported by competent, material and substantial evidence in the record considered as a whole?

## DISCUSSION

### Issue I

PERA prevents an employer from interfering when public employees "engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection". Such activities are protected.

Not every act is sanctioned. It must be concerted group activity directed, in part, toward "bargaining or other mutual aid and protection". Activities furthering a group rather than an individual interest will generally be considered concerted. Actions justifying discharge or suspension for cause are not protected.[2]

The Fourth Circuit reversed a reinstatement order in *Joanna Cotton Mills Co v National Labor Relations Board,* 176 F2d 749 (CA 4, 1949). The

---

[1] *Also see* Const 1963, art 6, § 28, § 106 of the Administrative Procedures Act (MCLA 24.201 *et seq.;* MSA 3.560[101] *et seq.)* and *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96, 100–103; 204 NW2d 218 (1973).

[2] *See National Labor Relations Board v Phoenix Mut Life Ins Co,* 167 F2d 983 (CA 7, 1948) and *Salt River Valley Water Users' Ass'n v National Labor Relations Board,* 206 F2d 325 (CA 9, 1953). *Also see* 6 ALR2d 416.

employee had been cautioned about his on-the-job conduct. The employee took offense, berated the supervisor and circulated a petition calling for his discharge. The company discharged the employee because the petition had an adverse effect on discipline.

The Court said this activity was not protected but "was a mere continuation and aggravation of the original defiant conduct". The Court did not feel that "all activities in which employees act together are 'concerted activities'" for statutory purposes. The employees need not be organized but they must act together for mutual aid and protection.

In *Mushroom Transportation Co v National Labor Relations Board,* 330 F2d 683 (CA 3, 1964), a non-regular employee was discharged in part for telling other employees that they were not receiving the full benefit of the collective bargaining agreement. The Court said these contacts could not be considered concerted activity and set aside the order reinstating the employee.

The Court found no evidence of an effort "to initiate or promote any concerted action". The Court would not adopt the view "that any conversation between employees comes within the ambit of activities protected by the act provided it relates to the interests of the employees".

"It is not questioned that a conversation may constitute a concerted activity although it involves only a speaker and a listener, but to qualify as such, it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees."

The Court said "mere talk must, in order to be protected, be talk looking toward group action".

This emphasis on activity furthering a group interest is seen in *National Labor Relations Board v City Yellow Cab Co,* 344 F2d 575 (CA 6, 1965). Two drivers had been discharged because they joined the striking switchboard operators in picketing. The Court said this was concerted activity and quoted the following from Judge Learned Hand's opinion in *National Labor Relations Board v Peter Cailler Kohler Swiss Chocolates Co,* 130 F2d 503 (CA 2, 1942):

" 'Certainly nothing elsewhere in the act limits the scope of the language to "activities" designed to benefit other "employees"; and its rationale forbids such a limitation. When all the other workmen in a shop make common cause with a fellow workman over his separate grievance, and go out on strike in his support, they engage in a "concerted activity" for "mutual aid or protection," although the aggrieved workman is the only one of them who has any immediate stake in the outcome. The rest know that by their actions each one of them assures himself, in case his turn ever comes, of the support of the one whom they are all then helping; and the solidarity so established is ·"mutual aid" in the most literal sense, as nobody doubts.' "

Also see *Morrison-Knudsen Co v National Labor Relations Board,* 358 F2d 411 (CA 9, 1966) saying that " 'Section 7 rights are group rights, relating to "concerted activity" ' ".

As earlier stated, not every employee action is protected. It must be an element of lawful concerted activity which is directed toward mutual aid and protection. The above-cited cases contain a constant refrain. The activity must either be group activity or directed toward furthering a group

interest.[3] Judge Hand spoke of "common cause"
and "solidarity". The Third Circuit spoke of "ini-
tiating or inducing or preparing for group action"
or having "some relation to group action in the
interest of the employees".

Mrs. Wilder's activities, even though subsequent
to the filing of a grievance, do not merit the
protection of PERA. It is pertinent that the trial
examiner found that

" * * * the record *does not disclose any motivation
on the part of the School District in denying the Charg-
ing Party a permanent school bus route that is prohib-
ited by the Act.* The Charging Party argues that it was
contrary to the contract, contrary to seniority provi-
sions of the contract, and generally unfair to treat her
in this manner. None of these actions, however, are
prohibited by PERA. This conclusion is further bol-
stered by the fact that *the Charging Party does not
allege that she engaged in any concerted, protected
activity up until November 17,* which was her last day
of work, that could give possible grounds for concluding
that the Charging Party was denied permanent employ-
ment for this reason. *The Charging Party joined the
Union October 29, this alone, was the extent of her
Union activity."* (Emphasis added.)

Nevertheless, the trial examiner continued:

"The undersigned is of the opinion that Sec. 10(a) of
PERA makes the filing of a grievance pursuant to a
collective bargaining agreement protected activity, and
a public employer is prohibited by PERA from taking

---

[3] In 18B Kheel, Business Organizations: Labor Law, § 10.02[3] the
author says the following are necessary elements of concerted activ-
ity:

  "(1) there must be a work-related complaint or grievance;

  "(2) the concerted activity must further some group interest;

  "(3) a specific remedy or result must be sought through such
activity; and

  "(4) the activity should not be unlawful or otherwise improper."

any action that would interfere, restrain or coerce public employees when so doing.

*"In the case at hand, however, the Charging Party was discharged not for having filed the grievance but because of the telephone calls the Charging Party made to other employees. * * **

"In the fact situation at hand, the Charging Party, *when preparing her grievance,* called another driver indirectly involved and *told her of her intent. This, I am convinced, amounted to protected concerted activity."* (Emphasis added.)

MERC later found that there was "sufficient evidence in the record to support the conclusion that * * * her further attempts to *solicit the aid* of fellow employees * * * constituted protected, concerted activity regardless of the merits of her individual grievance". (Emphasis added.)

The actual testimony demonstrates that her actions did not institute or implement any group action. There is no intimation of a "common cause" or "solidarity" between Mrs. Wilder and her coworkers. If anything, her actions ruptured the bonds of common cause. She even alienated the union president.

Plaintiff was not discharged for filing the grievance or for union activity or membership. She was discharged because her actions exceeded the permissible gathering of information in support of her grievance. Plaintiff did not communicate to develop facts but to complain, coerce and intimidate. Those activities do not warrant protection. Those activities furnish ample cause for discharge.[4]

---

[4] The Tenth Circuit in *National Labor Relations Board v Meinholdt Manufacturing Inc,* 451 F2d 737 (1971) refused to enforce an order of reinstatement. The employee had been once discharged for spending time away from his machine complaining to other employees about wages and working conditions. He was rehired and told to refrain from such activities. He did not and was again discharged. The Court said one "who 'bugs' management for higher wages and better work-

*Issue II*

Section 16(d) of PERA says MERC's findings of fact are conclusive "if supported by competent, material and substantial evidence on the record considered as a whole". This quantum of support is not present in the instant case.

MERC's orders said Mrs. Wilder was dismissed "for reasons which do not appear on the record". As demonstrated above, this statement simply does not reflect the facts. MERC said defendant used "the telephone calls as an excuse for terminating Wilder". This statement is without testimonial basis. It is unwarranted, unsupported speculation.

The record must support "by competent, material and substantial evidence" a conclusion "that the activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint". *Indiana Gear Works v National Labor Relations Board,* 371 F2d 273 (CA 7, 1967). This conclusion is not supplied solely by the employee's filing of a grievance. *National Labor Relations Board v Northern Metal Co,* 440 F2d 881 (CA 3, 1971).[5]

Plaintiff was discharged for cause. Her activities were not inextricably related to protected activity. Mrs. Wilder's discharge was not predicated upon her exercise of protected rights. Plaintiff was discharged for good and ample cause which is fully reflected in the record. MERC's findings are not equally reflected.

---

ing conditions and who speaks with fellow employees on the job relative thereto, is not engaged in the 'concerted activity' of employees for mutual aid and protection prescribed by the Act". The employee's complaints "were directed exclusively to his own wages, hours and working conditions".

[5] *Compare National Labor Relations Board v Interboro Contractors, Inc,* 388 F2d 485 (CA 2, 1967).

I would reverse the Court of Appeals and MERC and uphold Mrs. Wilder's discharge.

J. W. FITZGERALD, J., did not sit in this case.