### WASHINGTON v CHRYSLER CORPORATION

LABOR RELATIONS—UNIONS—GRIEVANCE SETTLEMENT—PROCEDURE—
EXHAUSTION OF REMEDIES—JUDICIAL DETERMINATION—STAND-
ING—WRONGFUL DISCHARGE.

  A discharged union employee ordinarily has no standing to
  invoke a judicial determination of his claim of wrongful dis-
  charge where he fails to utilize the grievance-settlement proce-
  dure as provided by collective bargaining agreement; however,
  the employee is not required to exhaust his intra-union reme-
  dies where the conduct of his employer amounts to repudiation
  of the contract, where the union has the sole power to invoke
  higher stages of the grievance procedure and the employee is
  prevented from exhausting his contractual remedies by the
  union's wrongful refusal to process a grievance, or where the
  effort to proceed formally with contractual or administrative
  remedies would be wholly futile.

Appeal from Wayne, Richard M. Maher, J. Sub-
mitted April 8, 1975 at Detroit. (Docket No. 19476.)
Decided August 11, 1975.

Complaint by Willie Washington against Chrys-
ler Corporation for damages for wrongful dis-
charge from employment. Defendant's motion for
summary judgment denied. Defendant appeals by
leave granted. Reversed.

*Henry, Smith, Sabbath & Dillard, P. C.,* for
plaintiff.

*A. William Rolf,* for defendant.

REFERENCE FOR POINTS IN HEADNOTE
48 Am Jur 2d, Labor and Labor Relations § 334.

Before: R. B. BURNS, P. J., and M. J. KELLY and
O'HARA,* JJ.

O'HARA, J. The City of Detroit, and its environs,
is the home of a great many plants of the "Big
Three" automakers. Chrysler Corporation, appel-
lant here, is one of them.

The U.A.W.-C.I.O. is the collective bargaining
agent for virtually all of the production workers
employed in this industry. Local 51 is the sub-unit
here involved.[1]

Periodically the employers and the union go
through intense and exhaustive collective bargain-
ing sessions. Eventually they hammer out collect-
ive bargaining agreements generally called "labor
contracts". These contracts include the method of
handling grievances that union members file. It is
an elaborate system beginning with a complaint to
a designated union representative and intermedi-
ate steps leading to full scale arbitration.

Plaintiff-appellee was fired for what may fairly
be called disciplinary problems. He complained to
his union committeeman. The committeeman took
the first step in the grievance procedure by letter
of protest and request for reinstatement. It was
the union judgment on the facts of the case that
reinstatement was utterly out of the question ir-
respective of how many additional steps under the
contract were taken in the employee's behalf.

It is, of course, manifest that the whole griev-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The plaintiff brought suit against Chrysler Corporation seeking
damages for wrongful discharge and the local and international
unions for breach of the duty of fair representation. The unions were
dismissed as a party to the cause of action. No appeal was taken
therefrom. This interlocutory appeal was taken by leave from a
denial of defendant Chrysler's motion for summary judgment based
on plaintiff's alleged failure to exhaust his intra-union grievance
procedures.

ance settlement system would collapse if the union were obligated under *all* circumstances to carry every grievance filed to the ultimate disposition by arbitration. There would be an equally ridiculous result if every loser at the initial step of the proceedings could run to the courts to litigate the issue of whether the union adequately represented him.

The whole body of law, state and Federal, is so well settled it seems an exercise in futility to write to it. The plaintiff in this case had an alternate intra-union route. If he believed his union did not adequately represent him, the union constitution provides how he is to test the question.

The simple and irreducible fact is that the discharged employee had no standing to invoke a judicial determination before he utilized the procedure in accordance with the union provision. We are aware of *MERC v Reeths-Puffer School District,* 391 Mich 253; 215 NW2d 672 (1974). It is inapposite. *Reeths-Puffer School District* was concerned largely with the enforcement of a MERC order, an issue not involved in this case.

Instead of proceeding as provided in the union constitution plaintiff sought a judicial disposition to which he was not entitled at that time. He states the issue on appeal as follows:

*"Is the question of plaintiff's wrongful discharge by Chrysler Corporation one of fact to be determined by a jury?"*

The above is just exactly what the issue is not.

To hold affirmatively as to this stated question would be a judicial catastrophe. It would violate not only most grievance procedures now extant

but it would also turn most circuit courts in highly industrialized areas into labor grievance forums.

As our Supreme Court aptly observed in *Reeths-Puffer School District, supra:*

"There are abundant decisions of the NLRB and the United States Courts of Appeals and the Supreme Court of the United States construing * * * the NLRA * * * [to which] we may appropriately look * * * for guidance." 391 Mich at 260.

We think the same thing may be said of the United States District Courts, although we are not in all respects bound by their holdings.

In a carefully reasoned and copiously documented opinion the distinguished Chief Judge Kaess of the Eastern District of Michigan addressed himself to the issue raised here. We quote him with approval.[2]

"There appears to be three recognized exceptions to the rule requiring exhaustion of intra-union remedies:

"1. A member is not limited to the exclusive remedial procedures established by the collective bargaining agreement when the conduct of his employer amounts to repudiation of the contract. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967).

"2. A member may bring suit when the union has the sole power under the contract to invoke the higher stages of the grievance procedure, and the member is prevented from exhausting his contractual remedies by the union's wrongful refusal to process a grievance. *Vaca v Sipes, supra.*

"3. Finally, a member will not be required to exhaust his intra-union remedies where the effort to proceed formally with contractual or administrative remedies would be wholly futile. *Glover v St Louis-San Francisco R Co,* 393 US 324; 89 S Ct 548; 21 L Ed 2d 519 (1969)."

[2] *Meaders v Chrysler Corporation* (ED Mich, 1973), unreported, Civil Action No. 34155.

Looking to these guidelines we now quote from the affidavit of the Shop Committeeman who took the first step in the grievance procedure, the letter of protest. It recites plaintiff's disciplinary record.

"6-30-65 he received written warning for poor attendance;

"8-26-65 he received written warning for overstaying his lunch period;

"1-17-66 he was written up for excessive absenteeism;

"2-18-66 he was disciplined one day off for absenteeism;

"3-15-66 he was disciplined three days off for absenteeism and tardiness;

"3-30-66 he was disciplined five days off for absenteeism and tardiness;

"4-12-67 he was discharged for unexcused absenteeism;

"5-8-67 reinstated on last chance basis through the efforts of Committeeman Groncki;

"11-19-67 he received written warning for overstaying his lunch period;

"4-16-68 he was disciplined five days off—penalty waived through intervention of Committeeman Groncki;

"5-1-68 he was discharged for overstaying his lunch period and refused union representation."

Writing further to the point that the union afforded good faith representation as far as it was reasonable and that plaintiff failed even to initiate his alternate intra-union remedy would be sheer over-kill.

The order of the circuit court denying appellant's motion for summary judgment is vacated. The cause is remanded to the circuit court for entry of an order of dismissal with prejudice of plaintiff-appellee's complaint.

Costs to the appellant.