REGENTS OF THE UNIVERSITY OF MICHIGAN v MICHIGAN
EMPLOYMENT RELATIONS COMMISSION

Docket No. 78-5478. Submitted October 15, 1979, at Detroit.—Decided
February 20, 1980. Leave to appeal applied for.

The Organizing Committee for Clericals, a committee attempting
to organize clerical workers at the University of Michigan,
posted a notice that a clerical union meeting would be held in a
room designated for exclusive use as a lounge for staff members
of the business school. University officials, upon becoming
aware of the proposed use of that room by the committee,
informed the committee that they could not use that room for a
meeting, since the use of that room for any meeting was
prohibited so as to provide a place of relaxation for business
school staff members. The committee filed charges with the
Michigan Employment Relations Commission alleging that the
university infringed upon the rights guaranteed by the Public
Employees Relation Act. The commission, contrary to the rec-
ommendation of the administrative law judge, found that the
University had infringed upon the employees' rights and or-
dered the university to cease and desist from prohibiting the
use of the staff lounge for union activity purposes. The univer-
sity seeks review, pursuant to statute, of that finding and order.
*Held:*

1. The Employment Relations Commission erred as a matter
of law by failing to recognize the critical distinction between a
union "meeting" and union "solicitation". The university's
refusal to permit a union meeting in a room specifically desig-
nated for the use of staff members during off duty periods and
in which no meetings of any kind were knowingly permitted
did not infringe upon the *solicitation* rights of the union. Since
other space was available for a union meeting, the university's
refusal to permit the union meeting in the staff lounge did not
constitute an unfair labor practice.

2. Findings of fact by the Employment Relations Committee

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations § 887.
  48A Am Jur 2d, Labor and Labor Relations § 1570.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1761.

are binding on the Court of Appeals if supported by competent, material and substantial evidence in the record when considered as a whole. The Court of Appeals is not bound, however, by findings of fact made by the commission when such evidentiary support is not found in the record.

Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYEES — UNION MEETINGS — USE OF EMPLOYER'S PROPERTY — EMPLOYER INTERFERENCE — STATUTES.

It is an error of law for the Michigan Employment Relations Commission to hold that a state university employer infringed upon the organizational rights of the university employees where the university prohibited the use of a room designated as a private employee lounge for the purpose of a union meeting, since there is a critical distinction between a union "meeting" and union "solicitation" (MCL 423.210[a]-[b]; MSA 17.455[10][a]-[b]).

2. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT — APPEAL AND ERROR.

Findings of fact made by the Michigan Employment Relations Commission which are not supported by competent, material and substantial evidence in the record when considered as a whole are not binding upon the Court of Appeals.

*Butzel, Long, Gust, Klein & VanZile* (by *Robert M. Vercruysse* and *Virginia Metz*) *(William P. Lemmer*, of counsel), for the Regents of the University of Michigan.

*Donald B. Greenspon*, for the Organizing Committee for Clericals.

Before: M. F. CAVANAGH, P.J., and M. J. KELLY and D. S. DeWITT,* JJ.

D. S. DeWITT, J. The Regents of the University of Michigan (hereinafter University) appeal from an order of the Michigan Employment Relations Commission (MERC) finding the University in vio-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

lation of § 10.1(a) and (b) of the Public Employee Relations Act (PERA), MCL 423.210; MSA 17.455(10), contrary to the recommendation of the administrative law judge, who had advised MERC that the charges against the University should be dismissed. The University filed a motion for reconsideration, which was denied, and subsequently took this appeal as of right pursuant to MCL 423.216(e); MSA 17.455(16)(e).

The Organizing Committee for Clericals (hereinafter OCC), a committee attempting to organize University clerical workers, charged that on October 11, 1977, the University, acting through administrative assistant Karen Carrier, cancelled a union organizing meeting which had been scheduled for the noon hour that day in Room 816 of the University's Business Administration Building.

Since 1973, Room 816 has been designated exclusively as a staff lounge for the use of all business school staff members, consisting of approximately 50 clerical workers, supervisors and professional and administrative employees. The lounge is a private room reserved exclusively for use by employees of the Business Administration Building. People other than business school staff members are permitted in the staff lounge only as invited guests of staff members. The evidence was uncontroverted that this rule had been enforced prior to October 11, 1977.

The staff lounge is a small room and was described as having a capacity of approximately 20 to 25 people. The room contains two couches, a table, and at least four chairs and is designated by the University as a place where the business school staff may rest and relax away from work. For example, during the lunch period, staff employees talk, read books, knit or crochet, play

cards, and the like. During non-lunchtime hours, the lounge is used for coffee break time.

The undisputed testimony revealed that the staff lounge was a private room and had never been utilized by the business school for meetings. According to the uncontroverted testimony of Karen Carrier, an administrative assistant at the University who supervises ten secretaries, the University would never permit a meeting of any type in the lounge if it were aware that one was scheduled. While the OCC offered testimony that it had held meetings in the lounge previous to October 11, 1977, it was nevertheless undisputed that the University had no knowledge of these meetings.

On October 11, 1977, University administrative assistant Karen Carrier observed the following notice posted in the Business Administration Building:

"Organizing Committee for Clericals

CLERICAL UNION MEETING

DATE: Tues Oct 11

TIME: 12:00-1:00

PLACE: 8th Floor Lounge

CLERICALS: COME AND DISCUSS WHY U-M CLERICALS NEED A UNION AND WHAT WE CAN DO ABOUT IT, FIND OUT ABOUT THE ORGANIZING DRIVE.

OCC                    Labor Donated"

Ms. Carrier testified that all she knew about the proposed union meeting was derived from the posted notice. She did not know how many people would attend the meeting or from what buildings they would come. After consultation with the University's personnel office, Ms. Carrier telephoned Sue Hansen of the OCC. Ms. Carrier explained to

her that the staff lounge was a private room and that the meeting could not be held there. She also informed Ms. Hansen that other rooms in the business school were available for meetings and could be reserved.

Just before noon on October 11, 1977, Ms. Carrier observed a woman she did not recognize in the staff lounge of the Business Administration Building. Ms. Carrier asked the woman if she could help her and the woman replied that she was there to conduct a clerical meeting. Ms. Carrier then explained to the woman that the room was a private lounge for use by business school employees only and that she could apply for a room elsewhere in the business school to hold the meeting. The University's offer of alternate space for a union meeting has been available continuously from October 11, 1977, to the present, but no request for use of that space has been made by the OCC. The business justification offered by the University for cancelling the union meeting was explained by Ms. Carrier: the staff lounge is not a conference room for meeting purposes, but rather is a room exclusively reserved by business school staff for eating lunch, playing cards, resting, and the like.

The University allows business school employees to discuss anything they want, including union matters, in the staff lounge. "Meetings" in the staff lounge, on the other hand, are prohibited.

Based on the above, and contrary to the administrative law judge's recommendation, MERC ruled that the University's "rule prohibiting organization meetings in the staff lounge without prior permission unlawfully infringes upon the protected concerted activities of the employees guaranteed in the Public Employment Relations Act and we find that Respondent has violated both

§ 10(1)(a) and (b) of PERA". The University was ordered to "[c]ease and desist from requiring prior notification or reservation of rooms which are reserved for employees *[sic]* use during non-working time, including the staff lounge."

The question raised by this appeal is whether an employer commits an unfair labor practice by preventing a union or union organizing committee from holding a noon meeting in a private staff lounge designated exclusively as a room for eating and relaxation by business school employees. For the reasons set forth below, we reverse the decision and order of MERC and find, as the administrative law judge found, that as a matter of law the University did not commit an unfair labor practice by refusing to allow a union meeting in a private staff lounge.

The section of PERA which the University was found to have violated provides:

"Sec. 10. (1) It shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; (b) to initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization: * * *" MCL 423.210; MSA 17.455(10).

In finding a violation of § 10 of PERA, the Commission drew the following conclusions:

"The Employer's unilateral requirement of prior management permission for employees to meet to discuss union affairs in the staff lounge is a violation of employees rights. Accordingly, in *Utica Community Schools,* 1966 MERC Lab Op 210, the Commission held that prohibition of the use of facility mailboxes for distributing election materials constituted interference with employees rights. A stronger case for a protected

right is present here, where the employer facility has been set aside for exclusive use by the University of Michigan staff and the same activity has been permitted on numerous previous occasions."

The above conclusion was based in part on the commission's factual finding that the University had a rule requiring "all meetings in the lounge to be scheduled through the Administration in advance". The commission further observed that the record was "unclear as to the extent the rule is enforced". Further support for MERC's decision was offered in the statement that the employer "may not restrict employees' right to meet to discuss union affairs unless a sufficient business justification is shown". MERC found that the University showed no special circumstances that would justify banning union meetings from the staff lounge during lunch breaks. Moreover, according to MERC, an employer may not bar employees from union solicitation during nonwork hours in nonwork areas.

It is clear from the above conclusions of fact and law that the commission has failed to recognize the critical distinction between a union "meeting" and union "solicitation". A meeting is typically an assemblage of persons gathered for a common purpose. Solicitation, on the other land, involves little more than an appeal for something by one to another. The difference is significant, particularly in the context of this case where a notice was posted advising of a formal "clerical union meeting". See *Livingston Shirt Corp*, 107 NLRB 400 (1953), *Hicks Ponder Co*, 168 NLRB 806 (1967).

Nowhere in the record is it shown or even suggested that the University prohibited employees from meeting in the lounge on nonwork time to discuss union matters. Nor is it shown that

employees were required to seek prior permission before discussing union affairs. Thus, the matter of the solicitation rights of the OCC is not at issue here.

What is at issue is the scope of the union's right to schedule a meeting in a portion of the employer's premises during nonworking hours. The only objectionable conduct charged by the OCC was the University's refusal to allow a formal union meeting at lunchtime in the University business school's private staff lounge.

In construing § 10 of PERA we are permitted to consider Federal cases interpreting the National Labor Relations Act. *Employment Relations Comm v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974), *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974). Accordingly, a resolution of the issue presented involves accommodating an employee's organizational rights with an employer's private property rights with as little impairment of one as is consistent with the maintenance of the other. *National Labor Relations Board v Babcock & Wilcox Co,* 351 US 105, 112; 76 S Ct 679; 100 L Ed 975 (1956), *Central Hardware Co v National Labor Relations Board,* 407 US 539; 92 S Ct 2238; 33 L Ed 2d 122 (1972). We agree with the administrative law judge's determination that a policy of permitting organizational activity in nonwork areas on nonwork time does not confer on the union the unqualified right to reserve any portion of the employer's premises for an organizational meeting. Specifically, the union has no right to schedule a meeting in a portion of the University's property already designated by the University for another use.

The University designated the staff lounge as a

private place for eating and relaxing during the noon hour and break time. It was reasonable to expect that a formal union meeting would substantially interfere with that designated use due to the limited capacity of the small room. The University had no way of knowing how many people would attend the meeting, but were justified in assuming that the number, when combined with the number of staff members desiring to use the lounge for lunch and relaxation from work, would be sufficient to overtax the small room. Solicitation, on the other hand, would not so interfere and was, accordingly, permitted by the University. Nor does the University's rule against permitting any meetings in the staff lounge significantly infringe upon the union's right to meet. The uncontroverted evidence established that alternate space was available and is currently available for use by the union.

Moreover, in addition to our disagreement with MERC's conclusions of law, we rule that the factual findings upon which the commission's conclusions were based are likewise erroneous. The proper standard by which the Court of Appeals reviews MERC decisions and orders is whether the record considered as a whole contains competent, material, and substantial evidence to support the decision. *Kalamazoo City Education Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 607; 281 NW2d 454 (1979), *Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974). See MCL 423.216(e); MSA 17.455(16)(e). On the record before us, we cannot find sufficient evidence to support MERC's finding that the University had a rule requiring all meetings in the lounge to be scheduled through the administration in advance. The sole witness

competent to testify as to University policy, Karen Carrier, indicated unequivocally that no meetings whatever were permitted in the staff lounge. Nor is there any shred of evidence in the record to support MERC's finding that the University imposed a requirement of seeking permission before employees were allowed to "discuss union affairs" in the staff lounge.

The most significant of the commission's unsupported findings, however, is that the University had permitted meetings in the staff lounge on numerous previous occasions. The evidence was uncontroverted that University officials had no knowledge of any prior union meetings conducted in the staff lounge and would have cancelled any such meeting had they so known. In fact, the only people permitted to use the staff lounge other than business school employees were invitees of staff members; the evidence was undisputed that all other nonstaff employees would be asked to leave the lounge.

In the absence of any knowledge of past meetings on the part of the University, and in light of the fact that the University reasonably expected a substantial number of people would attend the publicized "clerical union meeting", sufficient to interfere with that room's designated use, we reverse the commission's decision and order and find that the University committed no unfair labor practice in cancelling OCC's union meeting scheduled in the employer's private staff lounge.

Reversed.